MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
G. W. STINSON.

Decided January 16, 1904.

**1.—Disqualification of Judge—Special Term of Court.**

Where a special term of the district court was duly ordered by the district judge, and when the time designated for it had arrived the judge was holding regular sessions of his court in another county of the district, an election by the bar of a special judge to hold such special term was authorized and valid. Following Railway v. Huff, 2 Texas Law Journal, 438.

**2.—Negligence—Charge—Railway Switchman.**

In an action for personal injury to a railroad switchman injured while making a flying switch by reason of the sudden drawing away of a certain car on which he stood, without notice to him, a charge of the court was not subject to objection as instructing that such sudden drawing away of the car was negligence where it instructed in the same connection that before the jury could find for plaintiff they must find that it was the duty of the foreman in charge of the switching to give plaintiff notice of the intended movement of the cars, and that he failed to give such notice, and that such failure was negligence and the proximate cause of the injury.

**3.—Same—Assuming Fact.**

The charge did not assume that the foreman failed to inform plaintiff of the method of handling the cars; nor did it justify plaintiff in attempting to step across to the top of the car that was suddenly moved without notice if he believed that all the cars in that train were to be then detached from the engine for the flying switch where the jury were required to find that it was the duty of another switchman to uncouple the proper cars at the time, and that his failure to do so was negligence.

**4.—Same—Negligence Question for Jury.**

A special charge was properly refused which took from the jury the right to determine whether or not the facts stated therein relative to plaintiff's action in attempting to step across to the top of the car would, under all the facts, constitute negligence.

**5.—Same—Special Charge.**

It was not error to refuse a special charge which, so far as applicable, was embraced in the main charge.

**6.—Personal Injury—Verdict Not Excessive.**

A verdict for $15,000 for permanent personal injuries to a railroad switchman, 26 years old and earning $90 per month, resulting in breaking the bones of one leg, rendering it shorter than the other, attended with much suffering, and putting him on crutches from the date of the injury until the trial, eleven months thereafter, is held not excessive.

Appeal from the District Court of Hunt. Tried below before Hon. T. D. Montrose, Special Judge.

*T. S. Miller* and *Perkins, Craddock & Wall,* for appellant.

*Yates & Carpenter,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—This suit was brought June 18, 1902, by the appellee against the appellant for damages for personal injuries sustained by the appellee March 6, 1902, while employed as switchman by the appellant. Trial was had before a jury February 6, 1903, resulting in a judgment in favor of appellee for $15,000. To reverse this judgment appellant prosecutes this appeal.

*Conclusions of Fact.*—Appellee was on the 6th day of March, 1902, in the employ of appellant in its yards at Greenville, Texas, as a member of a switch crew, composed of A. B. Gold, foreman; R. M. Littell, known as "the man following the engine," and T. J. Howell, and appellee, who were known as "field men." It was the duty of the foreman to notify the other members of the crew in advance of any movement of cars; and that where uncoupling of cars became necessary it was the duty of the man following the engine to perform this service. It was the duty of the field men to ride upon the cars when being switched, to set and release brakes on the same, and when riding a section of cars which had been detached from an engine, it was their duty to ride upon the front part of such detached section, to keep a lookout for the safety of such cars as well as to protect anything which might appear in the track of the same.

While so engaged in the performance of the duties of his employment on the night of March 6, 1902, the crew of which plaintiff was a member made a flying switch with a caboose, taking said caboose from one switch track, known as track No. 2, and placing it upon another, known as the "rocket," the two tracks being connected by another track known as the "lead," to which each of the switch tracks were connected by proper switch stands. To make the flying switch with the caboose the train of cars was put in motion and after reaching a sufficiently rapid rate of speed the speed of the engine was suddenly lessened, the caboose uncoupled from the car next to it, and then the front section of the train was drawn hurriedly away in advance of the caboose, past the switch stand; the switch was then thrown and the caboose allowed to roll upon the desired switch track. Before making such flying switch the plaintiff was engaged in setting the brakes upon three other cars, when the other members of the crew detached the engine and one car from these three cars and ran such engine and car to a point where they could back them in upon the track where the caboose and another car stood with the brakes of the caboose set thereon. After setting the brakes upon the cars upon which he had been left, plaintiff got off the same and saw the engine and car were backing in toward the car attached to the caboose. Knowing that the brakes of the caboose were set, he got upon the same and released the brakes thereon. About the time the brakes were released by plaintiff the car attached to the engine was coupled to the car next to the caboose and immediately the train was moved, and the flying switch begun. The foreman of the crew failed to notify him that a flying switch would be made of the caboose, and the first notice he had that such a switch would be made was when the slack was given the train for the uncoupling to be made. When such slack was given, the plaintiff knew that a flying switch was to be made of some part of the train, and having no notice from the foreman or anyone what part of the train would be uncoupled, he looked for the man following the engine whose duty it was to uncouple the cars.

The man following the engine was seen standing upon the footboard of the engine, in which position he could uncouple the train at no place except to uncouple the engine from the car next to it. Plaintiff started from his position upon the caboose to go to the front end of the car next to the engine, so that he would be in the place his duties required him, when the engine was detached from the cars following it. While attempting to step from the caboose to the car ahead of the same, the caboose was uncoupled from the car next to it and the front section of the train drawn rapidly away from the caboose, causing plaintiff to fall in front of the moving caboose, which passed over him, inflicting the injuries for which he sues. The undisputed evidence shows that when the caboose was uncoupled the man following the engine was upon the footboard of the engine, and that the caboose was uncoupled by the other field man, without notice from either the man whose duty it was to uncouple the cars under such circumstances, or from the field man who did the uncoupling.

The failure of the foreman to notify appellee that a flying switch would be made with the caboose, the failure of the man following the engine to uncouple the cars and the uncoupling of the same by a field man without any notice to the plaintiff that the field man would perform the duties required of the man following the engine, was negligence which was the proximate cause of the injury.

In deference to the verdict we find the appellee sustained damages as the result of such injuries in the amount found by the jury.

*Opinion.*—1. The first assignment of error complains of the action of the court in overruling appellant's objections to the trial of the case at the special term of court. The special term had been duly ordered by the district judge, and at the time of holding such special term the district judge was absent in another county of his district, holding a regular term of court of that county. The practicing attorneys proceeded under the statute to elect one of their number special judge. At such election Hon. T. D. Montrose was duly elected, and held said special term of court. In this there was no error. We so held in the case of Missouri K. & T. Ry. v. Huff, decided at the present term of court. 2 Texas Law Journal, 438. See, also, Munzenheimer v. Fairbanks, 82 Texas, 351.

2. It is contended that the court erred in the following paragraph of its charge: "If you believe from the evidence that on or about the 6th day of March, 1902, the plaintiff, G. W. Stinson, was in the employ of the defendant, the Missouri, Kansas & Texas Railway Company of Texas, as a switchman in its yards in Greenville, Texas; and if you believe that A. B. Gold was foreman of the switching crew, of which plaintiff was a member, and that it was the duty of said foreman to formulate a plan of work for said crew, and to notify the members of said crew of such plan, and to direct the manner of performing their work by said crew; or if you believe that plaintiff and T. J. Howell were

members of said switching crew and were known as field men, and that R. M. Littell was a member of such crew and was known as the man following the engine, and if you further believe that the defendant had a rule or rules, or that there was a custom in said yards, known to and acquiesced in by the defendant, requiring the man following the engine to uncouple the cars in said yard, when the members of said switching crew were engaged in the work of making a flying switch, and if you believe that the plaintiff was on one of the defendant's cabooses in said yard in the performance of his duty under his employment, and if you believe that said switching crew made a flying switch of said caboose while the plaintiff was on the same, and if you believe that it was the duty of said A. B. Gold, foreman, to have notified the plaintiff that said crew would make a flying switch of the caboose, and if you believe that A. B. Gold failed to give such notice, and that his failure (if he did fail) was negligence as that term is herein defined; or if you believe that when said flying switch was made, that R. M. Littell did not uncouple said caboose, and if you believe the same was uncoupled by T. J. Howell; and if you believe that neither the said R. M. Littell nor the said T. J. Howell, notified plaintiff that said caboose would be uncoupled by said T. J. Howell, and if you believe that plaintiff had no notice that said caboose would be uncoupled from the other parts of the train; and if you further believe that the uncoupling of the said caboose by said T. J. Howell and the failure of said R. M. Littell to uncouple the same without notice to plaintiff (if he had no notice) was negligence; and if you further believe that by the negligence of the said Gold the said Howell, or the said Littell, or all of them, in the manner submitted to you (if either was negligent), plaintiff was made to believe, and did believe, that all of the cars of the train were going to be uncoupled from the engine, and if you believe that it was the duty of the plaintiff, under his employment, to ride upon the front car of the train of cars when operated and moved, when the engine is detached from the same, and if you believe that plaintiff started to step from the top of the caboose, and if you believe that the negligence, if any, of the said Gold, said Littell and said Howell, or either of them in the manner submitted to you, caused the plaintiff to take such step, and if you believe while plaintiff was making such step, the car ahead of said caboose was suddenly drawn from said caboose, and the plaintiff thereby injured as set forth in his petition, and if you believe the negligence of the defendant, or its employes, Gold, Littell and Howell, or either of them, in any of the matters submitted to you, was the direct and proximate cause of plaintiff's injury, and if you believe that he was exercising ordinary care for his own safety, you will find for the plaintiff, unless you find for the defendant under other issues submitted to you."

It is insisted that this charge is erroneous and upon the weight of the evidence in that it assumes that the sudden drawing away the car ahead of the caboose caused plaintiff to fall, and that such sudden drawing away of the car was negligence causing the injury. The charge is not

subject to this criticism. Before the jury were authorized to find for plaintiff under this paragraph they were, in effect, told that they must find (1) that it was the duty of his foreman, Gold, to give plaintiff notice of the intended movement of the cars, and that he failed to give such notice, and such failure was negligence; or that Littell failed to uncouple the cars, and it was his duty to do so, and that the uncoupling was done by Howell without notice to plaintiff, and that Littell's failure to uncouple the cars and the uncoupling of the same by Howell, under the circumstances, was negligence; and (2) that one or all of such negligent acts or omissions, if any, was the proximate cause of plaintiff's injuries. The charge required the jury to find that it was the duty of Littell to uncouple the cars and that he failed to do so, and that such failure constituted negligence, before they were authorized to consider the fact he was at the engine instead of the place where the cars were uncoupled.

Nor does the charge assume that the foreman failed to inform plaintiff of the method of handling the cars. The evidence tending to show that appellee had notice of the proposed movement of the cars is so slight as to amount to no evidence. Gold does not pretend to say that appellee heard the explanation which he says he made to the crew as they went in on track No. 3. On cross-examination he states appellee was from one to one and a half car lengths from him when he made the explanation. Littell, in effect, contradicts Gold in that he says Gold did not make the explantion as they were going in on track No. 3, but that it was made to him as he and Gold were riding on the footboard of the engine and going in on track 2. At that time appellee was not present and could not have heard the explanation. Appellee positively denies that Gold explained to him the proposed movement of the cars, or that he had notice from any source.

The charge is not subject to the criticism that "it justifies the appellee in taking the step from the top of the caboose upon which he was riding to the top of the car ahead of the caboose and authorizes a recovery by him if he believed all the cars were to be detached from the engine." As before stated, the charge required the jury to find that it was Littell's duty to uncouple the cars at the time and that his failure to do so was negligence.

What the effect of Littell's position had on plaintiff's mind was correctly left to the jury, and they were given strictly in charge that in no event could plaintiff recover if his foreman or any other person had notified him of the intended movement of the car, or if he failed to exercise ordinary care for his own safety.

3. There was no error in refusing defendant's requested charge No. 2, the refusal of which is made the ground of its third assignment of error. Said charge is as follows: "If you believe from the evidence that the accident happened underneath an arc electric light, and if you further believe that just before the accident switchman Howell hallooed to switchman Littell that he Howell, would pull the pin, and that at that time

Howell was on the southwest corner of the caboose, or on the ground at such corner, and if you further believe that the plaintiff was then on top of the caboose, and heard the same, and that he thereby knew that the car next to the caboose was to be uncoupled therefrom, the plaintiff can not recover; or, if you believe from the evidence that a man of ordinary care and prudence, before attempting to step from said caboose, would have looked to see which car was to be uncoupled and dropped into the 'pocket,' and that by such looking he would have seen that the caboose was to be so uncoupled and dropped; and if you further believe from the evidence that the plaintiff failed to so look before stepping, and that such failure, if any, was negligence as that term is defined in the main charge, and that such negligence, if any, caused or contributed to cause the accident, you will find for the defendant."

This charge was upon the weight of the evidence. It also took from the jury the right to determine whether or not the facts stated therein would constitute negligence.

4. The fourth assignment of error complains of the action of the court in refusing the following special charge: "If you believe from the evidence that plaintiff knew, or in the exercise of ordinary care, that is, such care as a man of ordinary prudence under the circumstances would have exercised, he would have known, that the caboose was to be dropped into the 'pocket' switch, he can not recover, and you will find for the defendant." This charge, so far as applicable, was embraced in the main charge, and hence there was no error in refusing the same.

5. The sixth assignment of error complains of the action of the court in overruling its motion for a new trial, because the verdict is excessive. The appellee was 26 years and 1 month old at the time he was injured, and was earning $90 per month. He was working for appellant under his second contract of employment, and had less than two years' experience in railroad service. His injuries were serious and are permanent. He had not, up to the time of the trial, which was eleven months after he was injured, been able to walk without crutches. The ankle joint of his right foot is perfectly stiff, and his right foot and leg are crooked. A part of the larger bone of the lower right leg has been removed. Six inches of the remaining portion of this bone is diseased. The appellee, upon the trial, removed his shoe and stocking and bandages, and exhibited his foot and leg to the jury. He testified: "The bone of my leg came out above my ankle, the two bones of my leg sticking out at a point three or four inches above my ankle, that part so sticking out having been cut off. The ankle joint is stiff and I can not move it at all. There are sores there above the ankle which have never healed. * * * The foot and leg are now crooked. * * * I suffered pain, hurting worse at night." There was testimony by a physician that at the time of the trial he found the bones all in "a chronic inflamed condition, with the presence of suppuration evidently from the bone." The right leg is one and a fourth inches shorter than the left.

While the verdict is large we are not prepared to say it is excessive. It is not so large as to indicate that it was the result of passion or prejudice on the part of the jury. We conclude that there was no error in overruling the motion for a new trial herein on the ground that the verdict is excessive.

Finding no error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.