GALVESTON, H. & S. A. RY. CO. et al. v. HARRIS.

(Court of Civil Appeals of Texas. Galveston. June 28, 1913. Rehearing Denied Oct. 9, 1913.)

DAMAGES (§ 132*)—PERSONAL INJURIES.

Plaintiff was a brakeman, 35 years old, in good health, and earning an average salary of $100 a month. While passing over the top of some cars he fell, and the back of his head hit the end of the car and his right leg was dislocated at the hip. He was confined to his bed for 22 or 23 days and his physical suffering was intense. Thereafter his limb gradually became paralized, which wholly prevented his use of the leg. Whether this condition was permanent was not clear. He testified that he was impotent, but his physicians claimed that this was due to an extremely nervous temperament and that organic impotency would not be expected to develop from the injury. Held, that a verdict of $27,500 should be reduced to $22,500.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Harris County; Wm. Masterson, Judge.

Action by A. P. Harris against the Galveston, Harrisburg & San Antonio Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed for reduced amount.

Baker, Botts, Parker & Garwood, Lane, Wolters & Storey, and Wm. A. Vinson, all of Houston, for appellants. John W. Parker, of Houston, for appellee.

McMEANS, J. A. P. Harris sued the defendants, Galveston, Harrisburg & San Antonio Railway Company and the Texas &

New Orleans Railroad Company, for damages for personal injuries sustained by him, and recovered a judgment on the verdict of a jury for $27,500. From this judgment the defendants, after their motion for a new trial had been overruled, have appealed.

The only assignment of error presented by appellant is that the verdict is excessive.

Appellee at the time of his injury was 35 years old, in good health, and was in the service of appellants in the capacity of brakeman, and earning an average salary of $100 per month. While passing over the top of some cars he fell in a hole in the roof of one of them and to the floor of the car below. As he fell the back of his head hit the end of the car and his right leg hung over a rod or rafter in such way as to dislocate it at the hip. The dislocation was at once properly reduced. He was confined to his bed for 22 or 23 days, and his physical suffering has been intense. A few days after he was hurt he noticed a loss of sensation in the injured leg. This loss was gradual, and at the time of the trial, and for some time before, the loss of sensation was complete, except in two places on the thigh. The muscles of the thigh are now atrophied; the injured leg measuring 1¾ inches less in circumference than the other. The shrinking of the leg is due to a nerve lesion, and not to nonuse, as in nonuse the shrinking rarely is greater than half an inch. Paralysis of the leg resulted from the injury, and there has at no time since his injury been any marked improvement in its condition. The nerve lesion was not in the brain or in the spinal canal, but at some place after the nerves left the spinal canal. Plaintiff cannot walk on the injured leg or bear his weight or stand upon it. As to whether this condition is permanent, Dr. Gavin Hamilton, who had treated and had plaintiff under his observation practically ever since his injury, testified: "As to what my opinion is, as to whether the condition of that leg, and the other things ancillary to it, whether it is permanent or not permanent, why, at this state and this length of time after the injury, and after the onset of paralysis, I should say to a great extent it would be permanent. Of course, you understand that paralysis is a result of nerve lesion, and without knowing just exactly the condition that that nerve is in, it would be practically impossible to say just how much of motion he could recover, or how much he could not. However, the probabilities are he will never fully recover the use of that limb." On this subject Dr. Neuhaus, who had examined plaintiff only once, testified: "It is my opinion that the injuries that I have described to the plaintiff's leg are of a permanent nature; in my opinion it is a permanent injury. It is also my opinion that he will not be able to do labor that requires him to be on his feet,

manual labor, anything that requires stepping up high, or jumping or climbing, or such as that, I don't think he will be able to do. Neither do I believe he will be able to do any lifting or anything of that sort." Plaintiff testified that since his injury he had been impotent, and on this subject Dr. Hamilton testified: "I do not think that the condition I found and that I have described could produce impotence, complete or partial; I don't think that the condition he has got could produce any organic changes in the nerves themselves which would produce impotency, but a man in his condition, it is possible for him to have functional impotency. In a case of his sort that would be a feature of it; it might develop functional impotency and it might not, but I wouldn't expect any organic impotency; that is interference with the nerve supply which covers those organs; that is because there is no injury to those nerves. If he is suffering from impotency, I would ascribe that condition, or say, that it was simply a functional condition, due to an extremely nervous temperament or something of that kind." Plaintiff's mental suffering has been considerable.

From the foregoing it will be seen that the medical experts who testified in the case were not certain that plaintiff's leg would always remain paralyzed, and that at the time they testified sufficient time had not elapsed after the injury to demonstrate that there would be no improvement in his then condition. Had it been made to appear that his condition would not improve, it is not unlikely that the amount awarded plaintiff by the verdict would have been permitted to stand. But Dr. Hamilton, who had treated plaintiff and had him under his observation practically all the time from the date of the injury to the time of the trial, showed by his testimony that he was not certain of the permanency of the then condition of plaintiff, for he says that "at this stage, and this length of time after the injury," and "without knowing just exactly the condition that the nerve is in, it would be practically impossible to say just how much of motion he could recover, or how much he could not," but that it is probable he will never fully recover the use of the leg. Dr. Neuhaus' opinion of the permanency of the injury was more pronounced than that of Dr. Hamilton, for he says that the injuries he described were permanent; but this is in a measure qualified by his subsequent statement showing that he meant that in his judgment plaintiff would not be able to perform manual labor that would require him to be on his feet, or to step high or jump or climb or do any lifting. Plaintiff says he is impotent, but Dr. Hamilton says that the cause is not organic, but functional, and due to an extremely nervous temperament or something of that kind.

In these circumstances we think the jury, actuated by sympathy, no doubt, awarded plaintiff a sum in excess of that which they should have found in his favor, in at least the sum of $5,000, and for the error in so doing the judgment must be reversed and the cause remanded, unless plaintiff shall within ten days file in this court a remittitur of said sum, in which event the judgment will be affirmed for $22,500.

Since handing down the decision in this case the plaintiff has filed a remittitur of $5,000, and the judgment of the court below will be affirmed for $22,500.