### *ST. LOUIS & S. F. R. CO. v. BROWN.

No. 5209.  Opinion Filed September 22, 1914.  Rehearing Denied December 30, 1914.

(144 Pac. 1075.)

1.  TRIAL—Quotient Verdict.  The facts examined, and found not to bring the case within the definition of a quotient verdict or verdict by lot.

2.  SAME—Impeachment of Verdict—Testimony of Jurors.  Upon grounds of public policy, the jurors will not be heard, by affidavit, deposition, or other sworn statement, to impeach or explain their verdict by showing on what ground it was rendered, or that they made a mistake, misunderstood the law, or the result of their finding.  The question as to whether or not evidence of jurors will be received to prove overt acts, resulting in an irregular or an unauthorized verdict, is not involved, and the point is not decided.

*Appealed to the United States Supreme Court.

3. APPEAL AND ERROR—Master and Servant—Review—Effect of Verdict—Injury to Railroad Employee—Negligence—Questions for Jury. Under all the facts and circumstances, the question of defendant's negligence was an issue for the jury. The jury having found in favor of plaintiff, and its finding has been approved by the trial cuort, the same will not be disturbed by this court.

4. MASTER AND SERVANT—Injury to Railroad Employee—Sufficiency of Evidence. There was sufficient evidence to carry the case to the jury; and the court did not err in overruling defendant's demurrer to the evidence, and in denying its motion for a directed verdict.

5. JURY—Right to Jury Trial—Federal Constitution. The seventh amendment to the Constitution of the United States has no application to trials in state courts. The state has a right to regulate trials in its own courts in its own way.

6. APPEAL AND ERROR—Master and Servant—Instructions—Assumption of Fact—Federal Employers' Liability Act—Assumption of Risk—Theory of Trial Court. Instructions of the court examined, and held to fairly cover the issues made by the pleadings and the evidence, and no error affecting a substantial right was committed in the court's instructions.

7. TRIAL—Refusal of Instructions Covered. Defendant requested certain special instructions be given to the jury, which were refused. Held the court had fairly submitted to the jury the law applicable to the issues, and no error was committed in the action of the court in this regard.

8. DAMAGES—Personal Injuries—Excessive Recovery. The facts show that both of plaintiff's feet were crushed; that his right foot was crushed in the instep and his toes were broken so the bones protruded through the flesh, causing same to become permanently drawn out of shape; that the muscles and tendons of said foot are permanently injured, so plaintiff can never have full and free use of same; that his left foot was bruised and maimed so that a large portion of the bones of his ankle and

foot were splintered and mashed, and it was necessary to remove same; that his injuries are permanent, which require him to use crutches, in order to walk; that he suffered a great deal of pain, and was under care of physicians for several months. Held that a verdict for $16,900 is not excessive.

(Syllabus by the Court.)

*Error from District Court, Carter County;*

*Stillwell H. Russell, Judge.*

Action by Harry A. Brown against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt* and *J. H. Grant,* for plaintiff in error.

*Stuart, Cruce & Cruce,* for defendant in error.

RIDDLE, J. This proceeding is prosecuted from a judgment of the district court of Carter county. The parties will be referred to as they were in the trial court.

The plaintiff in his petition avers in substance that he is a resident of the state of Oklahoma, and that the defendant is a common carrier, engaged in the operation of a line of railway, and in interstate commerce between the town of Hugo, in the state of Oklahoma, and through the town of Ashdown to the town of Hope, in the state of Arkansas; that on the 20th day of February, 1911, while engaged in cutting out and taking on cars in the town of Ashdown, Ark., in making up a regular train destined for Hugo, Okla., plaintiff was permanently injured through the carelessness and ngligence of one Tom Chamberlain, engineer, engaged in making up said train; that while assisting in switching and cutting out said cars in making up said train, as his duty and as he was ordered, he signaled said engineer to stop, and wait until he could throw the switch and arrange the knuckle on the end car, so that it would couple onto the main train standing on the passing track; that said engineer had stopped the train and plaintiff had thrown the switch and stepped in between the rails and between the ties to fix the knuckle on the coupler, as was his duty to do; said engineer, disobeying plaintiff's signal to wait, and without warning or notice to plaintiff, with great force, carelessly and negligently put said engine in motion and backed said cars upon plaintiff so suddenly and unexpectedly as to make it impossible for plaintiff to escape, and plaintiff was thrown violently across said rail, and both of his

feet were crushed and maimed so that he sustained permanent injuries; that said plaintiff's right foot was crushed in the instep and toes and the bones broken therein so that same protruded through the flesh, causing said foot to become permanently drawn out of shape; that said muscles and tendons of said foot were permanently injured, bruised, and strained so that plaintiff could never have full and free use of same; that plaintiff's left foot was bruised and maimed so that a large portion of the bones of the ankle and foot were splintered and smashed so that it became necessary to remove the same, thereby crippling the plaintiff and causing him to use crutches in order to walk; and that by reason of said injuries, plaintiff suffered great mental pain and anguish, and has been ever since said injury under constant care of physicians and surgeons. Plaintiff further alleges that it became and was his duty to so arrange the knuckle at the ends of the cars that the same would couple by impact, and while the cars on the mill track were being pulled out upon the passing track, he crossed over to the end car of the train, left standing on the passing track, to open the knuckle thereon, but that the same was so defective that plaintiff was unable to open the same. The plaintiff then signaled the engineer, as aforesaid, to stop and wait while he opened the knuckle upon the rear car attached to said engine. That said knuckle was so defective that it stuck and refused to open, and that it was while so engaged that plaintiff was injured, as herein alleged, while he was in the exercise of due care and without fault or negligence on his part. That both of said cars were used by said defendant in interstate commerce and had couplers so defective that they would not couple by impact, as required by Act of Congress of March 2, 1893 (U. S. Comp. 1913, 8605-8612), and as amended by the Act of April 22, 1908 (U. S. Comp. St. 1913, 8657-8665). That by reason of such injuries, he sustained damages in the sum of $35,000, and prays judgment.

The defendant denied generally and specifically all and singular every allegation in said petition, except such as were specifi-

cally admitted. It alleged that said train was a local, operating wholly within the state of Arkansas between Hope and Ashdown, and denies that either of said cars were so defective or that they were equipped with defective couplers, as alleged. It averred that said cars and each of them were properly equipped with operating levers by which the knuckles and couplers on said cars could be prepared for coupling by impact while standing outside of the track and without going between the said cars, and denies that the injuries, if any, received by plaintiff, were caused in any manner by the negligence of the defendant, and alleges that if said injuries were contributed to by any act of negligence, save his own, that it was the negligence of a fellow servant or fellow servants of the plaintiff, for which the defendant would not be liable. Defendant specifically alleges that the injuries received were due to and directly contributed to by the negligence of plaintiff.

The plaintiff filed a reply, denying all and singular the allegations of new matter in the answer, and making certain affirmative allegations, not necessary to be set out at length.

Defendant, in its petition in error, assigns 22 errors, but only discusses the following: (2) Misconduct of the jury, whereby defendant was prevented from having a fair trial. (3) The verdict of the jury is not sustained by sufficient evidence. (4) Errors of law occurring at the trial and duly excepted to by defendant. (11) The court erred in overruling the demurrer of defendant to the evidence of plaintiff. (13) The court erred in refusing to instruct the jury to return a verdict in favor of the defendant. (15) The court erred in his instructions to the jury, and specifically in giving to the jury instructions Nos. 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20, inclusive and in giving each of said instructions. (16) The court erred in refusing to give to the jury the several instructions requested by defendant and in refusing to give each of said instructions as requested. (17) Said court erred in receiving a

verdict signed or agreed to by less than twelve jurors. (18) The verdict of the jury is excessive, appearing to have been given under the influence of passion or prejudice. (22) The court erred in overruling the defendant's motion for a new trial.

We will consider the various assignments relied upon in the order in which they are presented in counsels' brief, except we will group and dispose of the third, fourth, eleventh, and thirteenth together, as they involve principally one proposition of law, and are controlled practically by the same state of facts. It is sufficient to say that the plaintiff's testimony substantially sustains the allegations in his petition, as set out.

Under the first assignment presented by counsel, "misconduct of the jury," it is contended that it is shown from the testimony of two of the jurors that the amount of the verdict was arrived at by aggregation and average, and is what is denominated a "quotient verdict." It is not only the contention of the defendant's counsel that they have a right to show irregularity in the proceedings of the jury, resulting in an irregular verdict, but that by the testimony of two of the jurors, they have actually shown that this verdict was the result of a lot or chance; hence, it is contrary to law. It is the contention of plaintiff's counsel, however, (1) that the testimony fails to shows that the verdict is the result of a chance or lot, or a quotient verdict; and, (2) that under the rule laid down by this court, testimony of jurors will not be received for the purpose of impeaching their verdict. We have carefully read the testimony of the two jurors, and are of the opinion that it fails to show that this verdict is the result of chance or lot; nor is it a quotient verdict. In substance, the testimony of the jurors shows that after they had agreed that the plaintiff should recover, at the request of the foreman, each juror stated the amount which in his judgment the plaintiff should recover. Without an agreement to do so, some one suggested to the foreman to add the various amounts together and divide it by 12, which was done, and the result was $16,900. The testimony of each of the jurors, how-

ever, shows that after this was done, there were several votes taken on the question as to the amount the plaintiff should recover, and, finally; nine of the jurors concurred in the verdict for $16,900. A quotient verdict is defined to be "a verdict where each juror marks down an amount, then the amounts thus marked down, being added together, the sum is divided by the number of jurors and the result rendered as their verdict." This must be done as the result of an agreement in advance to make it their verdict. The facts do not show that the verdict in question is a quotient verdict. 29 Cyc. 812, under the head of New Trials, treats this subject as follows:

"A verdict will not be set aside merely because the amount thereof was the result of a compromise between jurors, nor because the amount was first found by adding together the amounts the several jurors thought should be given and dividing the sum by 12, if there was no agreement in advance to return a verdict for the quotient so found."

There are cases from California, Colorado, Delaware, Illinois, Iowa, Kansas, Kentucky, Mississippi, Missouri, Nebraska, New Hampshire, Texas, Utah, Michigan, Wisconsin, and from the federal courts cited in support of the text.

In the case of *City of Kinsley v. Morse,* 40 Kan. 588, 20 Pac. 222, it is stated in the syllabus:

"Where a jury are deliberating upon what their verdict shall be, and during such deliberation a ballot is taken by which it is ascertained that all of the jurors are in favor of the plaintiff, and thereupon each juror marks on a slip of paper the amount he believes the verdict should be, and such marking shows the lowest sum to be $3,000 and the highest, $5,000, and it is then proposed by a part of the jury to aggregate such sums and divide by 12, which is done, and the quotient is found to be $4,400, but no agreement is made that such marking aggregation, and division shall determine their verdict, but afterward such sum is agreed to, and returned as their verdict, *held,* where such verdict has been approved by the trial court, this court will not disturb the judgment."

In the case of *City of Kinsley v. Morse,* 40 Kan., 588, 20 Pac. (C. C.) 35 Fed. 649, the court, speaking through Mr. Justice Brewer, said:

"Two affidavits were filed charging misconduct on the part of the jury; one, an affidavit of a juror that a verdict was reached in pursuance of an agreement that each juror should write down the amount which he thought the plaintiff should receive, and, after adding them together and dividing by 12, that the amount so reached should be the verdict. Of course, if a verdict is reached in pursuance of an agreement to abide by the result of such an addition and division, it is misconduct such as would vitiate the verdict. But it is also true that it is not improper, and is common in matters of this kind, where the amount does not rest upon any fixed rule, but depends upon the discretion of the jury, for each juror to put down the amount which he thinks the plaintiff ought to receive, and the sum of the amounts being divided by 12 places before the jury a basis for further discussion and agreement; and when that is all that is done, such attempt to reach concord and agreement does not vitiate the verdict."

To the same effect, see *Gulf, C. & S. F. Ry. Co. v. Blue,* 46 Tex. Civ. App. 239, 102 S. W. 128; *McDonnell v. Pescadero Stage Co.,* 120 Cal. 476, 52 Pac. 725; *Barton v. Holmes,* 16 Iowa, 252; *Kennedy v. Kennedy,* 18 N. J. Law, 450; *Tinkle v. Dunivant,* 16 Lea (Tenn.) 503; *Bell v. Butler,* 34 Wash. 131, 75 Pac. 130; *McMurdock v. Kimberlin,* 23 Mo. App. 523.

It will be seen from the case last quoted that the facts are much like the facts in the case at bar; the material difference being that in the case now before us, after the aggregate sum was divided by 12, there was several votes taken, resulting finally in nine jurors concurring in the verdict returned, which happened to be the result obtained by dividing the aggregate amount. It must be of practically universal knowledge, and especially to the profession and the courts, that verdicts of jurors are more or less the result of compromise. It would be next to impossible to reach a verdict in every case, if this were not so. The court is

not able to say that the verdict in this case was not the deliberate opinion of each juror concurring therein, based upon the evidence.

This court has held several times, without any apparent qualification, that affidavits or testimony of jurors will not be received for the purpose of impeaching their verdict. *Colcord v. Conger,* 10 Okla. 458, 62 Pac. 276; *Barnes v. Territory,* 19 Okla. 373, 91 Pac. 848; *Pitchlynn v. Cherry,* 32 Okla. 77, 121 Pac. 196; *Tulsa St. Ry. Co. v. Jacobson,* 40 Okla. 118, 136 Pac. 410; *Glockner v. Jacobs,* 40 Okla. 641, 140 Pac. 142. Counsel very strenuously question the soundness of these decisions, and claim that the rule based upon sounder reason is found in the case of *Crawford v. State,* 2 Yerg. (Tenn.) 60, 24 Am. Dec. 467, by the Supreme Court of Tennessee, and in the case of *Perry v. Bailey,* 12 Kan. 539, the latter opinion being by Justice Brewer, and others cited, where the general and broad rule is modified. While we are impressed with the reason and logic advanced in the opinions cited, inasmuch as we hold that the evidence in this case fails to show that the verdict is a result of a lot or chance, or what is denominated a quotient verdict, we are not inclined to enter into an elaborate discussion of the wisdom of modifying the broad rule heretofore announced by this court.

The third, fourth, eleventh, and thirteenth assignments challenge the action of the court in overruling the demurrer to the evidence and overruling the motion for a directed verdict. The basis of defendant's contention is that when the court, at the request of plaintiff, withdrew from the consideration of the jury that part of his cause of action relating to defective couplers, plaintiff thereby withdrew from the consideration of the jury all testimony relating thereto, and hence, the effect of which was to leave the case in such condition to show that plaintiff was guilty of contributory negligence, and that all of his testimony bearing upon his cause of action, under the Employers' Liability Law, is unreliable, and should not be given any weight. It is contended that the only logical conclusion is, that in withdrawing from the consideration of the jury his cause of action, based

upon defective couplers, after he had testified, is a conclusive admission on his part that the testimony given by him relating to his cause of action under the Employers' Liability Law was false, and hence leaves no reliable testimony, for the consideration of the jury, tending to sustain his cause of action. In this conclusion we are unable to agree. These things may materially, but not necessarily, affect plaintiff's credibility as a witness, and the weight which might otherwise be given to his testimony. Certainly it does not necessarily follow that his testimony is, as a matter of law, false. Had he only alleged a cause of action under the Employers' Liability Law, his testimony as to the defective couplers would have been competent for the purpose of showing a state of facts which justified him in going between the cars, where he claimed he was at the time he was injured. This testimony would have been proper for the purpose of showing that he did not contribute to his own injury. Instead of this being conclusive proof that his testimony upon this point was false, or that he was mistaken, in the couplers being defective, it may be that this part of his cause of action was withdrawn from the consideration of the jury by his counsel over his protest, and while still contending that the couplers were, in fact, defective. If only one cause of action had been alleged, as we have shown, it would have been perfectly proper for the plaintiff to have testified to the defective condition of the couplers, if he found the same to be in a defective condition, for the purpose of justifying his conduct in being between the cars at the time of the injury, as tending to show that he was not guilty of contributory negligence. It would likewise have been competent for the defendant in error to have shown, if it could have done so, that the couplers were in perfect condition, and that all that was necessary for the plaintiff to have done was to use the lever, which he could have done without getting in between the cars. The plaintiff may have been mistaken in his testimony; that is, he may have been mistaken as to the actual condition of the couplers, yet, if he honestly believed and had

sufficient facts and circumstances existed at the time, justifying the belief in an ordinary and reasonable man, it would have made a proper issue for the court to submit to the jury for their determination whether or not he was guilty of contributory negligence. Suffice it to say, that in any event, it was within the province of the jury to pass upon the credibility of this witness and the weight to be attached to his testimony. This issue, having been properly submitted to the jury under a proper instruction, and since there was sufficient evidence to warrant the court in submitting it to the jury, their finding thereon and the approval of their verdict by the trial court is conclusive upon this court.

It is the further contention of defendant, under the assignments which we are discussing, that the court erred in overruling defendant's demurrer to the evidence; for it is claimed that plaintiff failed to show that he was employed and engaged in interstate commerce at the time he was injured. There seems to be no controversy regarding the law, but the issue arises under testimony tending to show that plaintiff was engaged at the time he was injured in interstate commerce, as defined by the provisions of the act of Congress. It seems from the charge of the court given to the jury, to the giving of which there was no exception, the court, as well as the respective counsel, practically agreed upon the law governing the issue upon this point. The court's instruction was as follows:

"You are instructed that the first question to be determined by you, after entering upon your deliberations, is whether the plaintiff, at the time he sustained the injuries alleged, was employed by the defendant in interstate commerce. In order to so find, it is incumbent upon the plaintiff to establish, by a fair preponderance of the evidence, that he was at the time of the alleged injuries actually engaged in assisting in the movement or transportation of a car or cars of freight destined for movement from a point in one state to a point in another state. It is immaterial whether there was any freight in the other cars of the train that was to be transported between interstate points,

but plaintiff must show by a fair preponderance. of the evidence that the car or cars that he was engaged in switching at the time of the injury, or the freight in such cars, was destined for movement between interstate points. If you so find, then the Act of Congress of April 22, 1908, would apply in this case. If, on the other hand, plaintiff has not established that he was so employed in interstate commerce at the time of the injury, then the Act of Congress of April 22, 1908, would not apply in this case."

The only question presented for our consideration is whether or not there was sufficient testimony to warrant the court in submitting this issue to the jury. The testimony of the plaintiff upon this point, in substance is as follows:

"I came from Hope to Ashdown on that day. We reached there about 10:30 in the morning. Defendant's main line and passing track at Ashdown run east and west. It also has a connection there with another road, and a spur going to the staving mill. The swing brakeman works in the middle. and handles the switch list. His name was Dan Godbold. Godbold went in ahead of me, and before I entered he came out and told me to bring the engine out on the mill track; that he had to make up the Hugo train. This was about 11 o'clock. We went through the necessary requirements to follow the instructions of the switch list and make up the train. Tom Chamberlain was the engineer. The engine was headed west. Godbold was giving directions from the switch list. He told me we were making up a train for Hugo. We took some cars from the mill spur and put some of them on our train, and took some back, spotted them, and did various other switching. By "our train," I mean the train we were working up for the Hugo crew. When we got through our switching on the staving mill spur, we backed back in there and spotted some cars there. I cut the car I got hurt from, or cut the others from it, and gave the engineer the go-ahead signal. This car and others was attached to the engine which was headed west. There was some cars on the passing track. It was the train we were making up. I walked over to the west end of this cut of cars that was on the passing track and tried the knuckle, the west knuckle. It is necessary to open one of the knuckles when you are going to make a connection between two cars.

There is a knuckle on each end of the car. I went there to open the knuckle on the west end of that car. I tried the lever and it would not work, and I tried the knuckle with my hands, and it only gave a portion of the way out."

In answer to questions, the witness stated:

"Q. Godbold, you say, was giving directions from the switch list? A. Yes, sir. Q. And his statements to you were that you were making up a train that was going to Hugo? A. Yes, sir."

Questions propounded to the enginter, Mr. Chamberlain:

"Q. Don't you know that the crew that was there was making, waiting for the train to be made up, to bring it to Hugo? A. I knew there was a crew there waiting for that."

The witness further testified:

"Q. What were they waiting for? A. Waiting for the stuff we brought in. Q. What do you mean by that? You mean the cars that you brought in from the east? A. The cars that we brought in from the east; they were going to take them on west. Q. This other crew? A. Yes, sir. Q. Whose crew were they? A. Conductor Sander's. Q. Where did that run go? From Ashdown on west to Hugo? A. Yes, sir."

The law is, without doubt, that as a prerequisite to the right of plaintiff to recover under the Employers' Liability Law, it was necessary for him to show that at the time of the injury he was actually engaged in interstate commerce. In the late case of *Ill. Cent. Ry. Co. v. Behrens, Adm'r*, 233 U. S. 473, 34 Sup. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, upon a certificate from the Circuit Court of Appeals of the Fifth Circuit, Mr. Justice Van DeVanter, speaking for the court, stated the rule as follows:

"Considering the status of the railroad as a highway for both interstate and intrastate commerce, the interdependence of both classes of traffic in point of movement and safety, the practical difficulty in separating or dividing the general work of the

switching crew, and the nature and extent of the power confided to Congress by the commerce clause of the Constitution, we entertain no doubt that the liability of the carrier for injuries suffered by a member of the crew in the course of its general work was subject to regulation by Congress, whether the particular service being performed at the time of the injury, isolatedly considered, was in interstate or intrastate commerce. * * * Passing from the question of power to that of its exercise, we find that the controlling provision in the act of April 22, 1908, reads as follows: 'That every common carrier by railroad while engaging in commerce between any of the several states * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in the case of the death of such employee, to his or her personal representative, * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.' Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. The act was so construed in *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146 [33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153]." *St. L., S. F. & Texas Ry. Co. v. State*, 229 U. S. 156, 33 Sup. Ct. 651, 57 L. Ed. 1129, Ann. Cas. 1914C, 156.

In the fifth paragraph of the court's charge, the jury was specifically instructed that it was incumbent upon plaintiff to show, by a fair preponderance of the evidence, that he was at the time of the alleged injuries actually engaged in assisting in the movement or transportation of a car or cars of freight destined for movement from a point in one state to a point in another state. Under this clear declaration of the law, if there were sufficient testimony to warrant the court in submitting this issue to the jury, and we hold there was, and the jury having found the issue in favor of plaintiff, which has been approved by the trial

court, such finding should be, and is, conclusive upon this court. If the question were before this court for decision, in the first instance, upon the record before us, we are not prepared to say, as a matter of law,  that plaintiff was not at the time of his injury, engaged in interstate commerce, but would feel justified in holding, under the rule laid down by the United States Supreme Court, that he was at the time of the injury, engaged in interstate commerce.

It is next insisted that the court should have directed a verdict for the defendant, for the reason, it is claimed, that the testimony conclusively shows that plaintiff's injury was due to an assumed risk.   It is insisted that this cause of action, having been based upon the federal Employers' Liability Act, it superseded the provision of our Constitution, and, therefore, is a question of law for the court to determine, and in this case, should not have been left to the jury. We have examined the evidence carefully, and are of the opinion that the court did not err in refusing to instruct the jury to return a verdict for the defendant.   Under the general law, and independent of the provision of our Constitution, where the question of assumption of risk depends upon a controverted issue of fact, it is a question to be submitted to the jury, like all other questions of fact.   There was sufficient testimony before the court and jury to warrant the court in submitting the issue of the assumption of risk to the jury, and the trial court, having approved their verdict, it will not be disturbed by us.

Under assignment of error 15,. counsel strenuously urge that the court erred in giving to the jury certain instructions.   The first one to which complaint is made is instruction 18, relative to the assumption of risk.   The instruction is as follows:

"You are instructed that, by accepting employment as a brakeman with the defendant, the plaintiff assumed the risk of such dangers as are ordinarily incident to the occupation he was engaged in; and if you find that his injury was occasioned by

one of the incidents ordinarily attending the occupation upon which he was engaged, you should return a verdict for the defendant. But you are instructed in this connection that the plaintiff only assumed the risks that are ordinarily incident to the occupation in which he was engaged, and that he did not assume the risks that were attendant upon the negligence of a fellow servant."

It is the latter part of the instruction to which complaint is made, claiming that after plaintiff withdrew his charge of negligence respecting the condition of the couplers on the cars involved, the sole charge of negligence remaining was alleged negligence of the engineer in moving the engine in disregard of plaintiff's signal for him not to do so. It is contended that the language used by the court is equivalent to an assumption of negligence on the part of the engineer, and, therefore, a comment on the weight of the evidence. In this conclusion, we are unable to agree with counsel. We fail to see how the jury could have been misled in this instruction. The court told the jury, in plain language, that if the plaintiff's injury was occasioned by one of the incidents ordinarily attending the occupation for which he was employed, they should find for the defendant. The issue of assumption of risk was raised by the defendant in its answer; and, certainly, it was proper to charge the jury upon this issue. After stating to the jury that plaintiff could not recover for an injury resulting from a risk which he himself had assumed, it was not prejudicial to further state to the jury that the plaintiff did not assume the risks that were attendant upon his fellow servants. Since defendant's liability to plaintiff grows out of a violation of a statutory duty, arising under an act of Congress, the rule seems to be that the assumption of risk is not a defense; and were it not for the fact that both parties tried the cause upon the theory that assumption of risk was a proper defense, the court would not have been warranted in submitting this issue to the jury. The fact, that the court may have committed error in charging the jury on this point, under such circumstances, would not warrant a reversal. Inasmuch as we hold

there is no substantial error in the court's instruction, affecting the defendant's rights, it is not necessary to enter into an elaborate discussion of this proposition.

It is insisted that instruction No. 13, given to the jury, is erroneous. The instruction reads:

"If you should find under the instructions heretofore given you that at the time of the injury to the plaintiff the defendant was engaging in interstate commerce, and that he was injured through the negligence of the defendant's engineer, and you should further find that plaintiff himself was guilty of negligence which contributed to his injury, then you are instructed that such negligence on the part of plaintiff would not defeat his right to recover, but that you should reduce his damages in proportion to the amount of negligence which was attributable to him."

The specific grounds of objection are that the court should have used the word "shall' instead of "should," that the word "should is merely advisory, and that the jury was left at its discretion in the matter of reduction of the damages. It has been said that the word "should" is the past tense of the word "shall," and we think, in the connection in which it was used, the jury understood that it meant more than simply advisory.

In the case of *Smith v. State,* 142 Ind. 288, 41 N. E. 595, the Supreme Court of Indiana held that it was more imperative than the word "may."

In the case of *Lynch v .Bates,* 139 Ind. 206, 38 N. E. 806. where the court charged the jury that in passing upon the weight of the evidence, etc., they "should" take into consideration the interest of the witness, etc., the court reversed the case, holding that the word "should" there was too imperative.

In the case of *Durannd's Adm'r v. N. Y. & L. B. R. Co.,* 65 N. J. Law, 656, 48 Atl. 1013, the court held that the word "should" implies the performance of some obligation or duty. Often the word "shall" is used to mean "may." So. it will be

seen that either of the terms cannot be considered abstractly, but must be considered in connection with the subject-matter and sense in which it is used.

It is next contended that the Instruction is erroneous, because the court did not require the jury to find that plaintiff was injured while engaged in interstate commerce, but simply stated that if the plaintiff was injured while defendant was "engaging" in interstate commerce. Suffice it to say that the court, in instruction No. 5, charged the jury fully upon this point. The instruction here to which complaint is made did not purport to cover this point. It is further urged that this instruction does not give the jury any intelligent rule by which to assess the damages, in the event the jury found that plaintiff's negligence partially contributed to the accident. While we do not approve this instruction as a model, yet we are convinced that the jury was not in any way misled by taking the instruction as a whole, when considered in connection with the other instructions given. We think this instruction fairly stated the rule, as applied to the act of Congress, by which the jury was to be governed in fixing the amount plaintiff was entitled to recover.

It is next insisted that instruction No. 19 was prejudicial. This instruction, in effect, advised the jury that as many as nine of their number concurring could return a verdict. It is earnestly contended that this was error, for the reason that plaintiff's cause of action arose under the federal Employers' Liability Law, hence, all the rights of both parties must be measured by the federal Constitution and laws, and that this includes the procedure governing the trial in federal courts. It is said that, under the federal Constitution, defendant was entitled to a unanimous verdict of a jury of twelve and that this right of a unanimous verdict must apply in all cases where the federal Employers' Liability Law is involved, whether the suit is in the state or federal court. This contention is not sound. It would seem that to state the proposition would be sufficient

to disclose the fallacy of the argument. Were it not for the recognized ability of counsel, and the zeal and earnestness displayed in pressing this point, we should be inclined to dispose of it by what we have just said. While it is true the state courts are under a sworn duty to recognize and enforce the Constitution and laws of the federal government, yet this does not mean that the state must follow the procedure of the federal government provided for the conduct of its own courts; that while the state must recognize the federal Constitution and laws as supreme, and enforce them as such, yet in its courts it can only be required to enforce them in accordance with the procedure provided by the state for the enforcement of its own laws. We apprehend that the state has the power to abolish a trial by jury altogether, and provide that all questions, both of law and fact, should be determined by the court. Should this be done, and a suit involving a right under the federal statute be instituted by a party in the state court, and he be denied a jury trial in accordance with the state law, yet, if such party, seeking to enforce his right under the federal statute, were accorded the same mode of procedure that all citizens of the state were entitled in the enforcement of rights under the state law, it could not be successfully urged that such party was entitled to a jury trial on the ground that he was seeking to enforce a right granted to him by a federal statute. The state is called upon often to enforce and administer the federal laws in her courts; yet she is only required to do so in the manner provided by, and in harmony with, the state law, and cannot be compelled to follow the procedure provided by the federal government for its own courts. The seventh amendment to the United States Constitution has reference only to the federal courts, and such territorial courts as are established by Congress and under the control of the federal government, and has no application to the state courts. Quotations from a few decisions will demonstrate this to be sound.

Form 6

In the case of *Walker v. Sauvinet,* 92 U. S. 90, 23 L. Ed. 678, the court, speaking through Chief Justice Waite, with reference to the seventh amendment to the Constitution, said:

"This, as has been many times decided, relates only to trials in the courts of the United States. *Edwards v. Elliott,* 21 Wall. 557, 22 L. Ed. 492. The states, so far as this amendment is concerned, are left to regulate trials in their own courts in their own way," *Pearson v. Yewdall,* 95 U. S. 294, 24 L. Ed. 436; *Hall v. Armstrong,* 65 Vt. 421, 26 Atl. 592, 20 L. R. A. 366.

In *Mondou v. New York, N. H. & H. R. Co.,* 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, discussing the jurisdiction of a state court to entertain a cause of action under the federal Employers' Liability Act, after an elaborate discussion of the proposition, it was said:

"We conclude that rights arising under the act in question may be enforced, as of right, in the courts of the states when their jurisdiction, as prescribed by local laws, is adequate to the occasion."

The expression "adequate to the occasion," evidently means when, according to the state law, the state courts have jurisdiction over the subject-matter and the parties. The cases cited and relied on by counsel have no application here. As shown by the decisions, the courts there were speaking in reference to the federal courts or territorial courts, which are necessarily controlled by the federal Constitution and statutes. Counsel have cited no authority, and we believe none exists, where it is held that the state courts must abandon their procedure and apply the federal procedure on account of the fact that a right arising under a law of Congress is involved. The expressions of the courts on this subject are all to the contrary.

It is next contended that the court erred in charging the jury on the measure of damages. We have carefully considered

this instruction in connection with the other charge of the court, and find no prejudicial error. We doubt if this instruction, standing alone, would have misled the jury, and, when considered with the whole charge, we find no ground for complaint. The court in this charge specially directed the jury to the other portion of the charge. The court, in another section, had charged the jury relative to diminishing the damages in the event they found that plaintiff had contributed to his own injury. It was not necessary to repeat it again in this section.

It is next contended that the court committed error in refusing to give certain requested instructions. We have duly considered the action of the court in refusing to give the various charges requested by the defendant, and find this complaint without merit. Several of these requested instructions were faulty as being a charge upon the weight of the evidence, and besides, the court had fully and fairly covered every point raised by the pleadings and which were sought to be covered by the instructions requested.

It is finally urged that the verdict of the jury is excessive. After a careful consideration of this point, we are not prepared to say, under the facts and circumstances of this case, that the verdict is excessive. The trial court and the jury had a much better opportunity to pass judgment upon this matter than we. The record shows this to be rather an aggravated case. We are unable to place ourselves in a position to gain the knowledge from the physical facts and expressions of the plaintiff and many circumstances in connection therewith. The appellate court should with great reluctance disturb a solemn finding of a jury, on the ground that it is excessive, after it has been approved by the trial court. We should be thoroughly satisfied that the jury was actuated by passion, prejudice, partiality, or corruption. The verdict should be so outrageously large and excessive as to shock the conscience of man on first blush, before we should feel authorized to use this extraordinary power by

reversing or requiring a *remittitur*. The fact that, if we were sitting as jurors, we would not fix the amount so large as did the jury, is not sufficient; for, in that case, we would simply be substituting our judgment for that of the jury and the trial judge. *St. Louis & S. F. R. Co. v. Richards,* 23 Okla. 256, 102 Pac. 92, 23 L. R. A. (N. S.) 1032; 4 Sutherland on Damages, sec. 1256; 13 Cyc. 126.

In the case of *San Antonio & A. P. Ry. Co. v. Connell,* 27 Tex. Civ. App. 533, 66 S. W. 246, plaintiff was an engineer, earning about $135 to $150 per month. He was 41 years of age; lost the use of one leg, though it was not amputated. A verdict for $18,000 was cut to $16,000, and sustained.

In *Missouri, K. & T. Ry. Co. v. Stinson,* 34 Tex. Civ. App. 285, 78 S. W. 986, plaintiff was a switchman, 26 years of age, earning $90 per month. The ankle joint of his right foot was injured, making said joint permanently stiff, and he could not walk without crutches, and his leg was crooked. A verdict for $15,000 was sustained.

In *Lynch v. American Linseed Co.,* 122 App. Div. 428, 107 N. Y. Supp. 458, plaintiff's legs were mangled and crushed so he was made a cripple. A verdict for $20,000 was sustained.

In *M. K. & T. Ry. Co. v. Farriss* (Tex. Civ. App.) 120 S. W. 535, plaintiff was a young man of industrious habits. He lost the use of both legs and was a permanent cripple. A verdict of $23,750 was sustained.

In *Galveston, H. & S. A. Ry. Co. et al. v. Harris* (Tex. Civ. App.) 159 S. W. 907, plaintiff was a brakeman, 35 years old, in good health, and earning an average salary of $100 a month. His right leg was dislocated at the hip, and thereafter it became paralized, which wholly prevented his use of the leg. Whether this condition was permanent was not clear. A verdict of $27,500 was reduced to $22,500 and sustained.

In *Gennaux v. Northwestern Imp. Co.* (Wash.) 130 Pac. 495, the injury to plaintiff resulted in the loss of the use of one leg. A verdict for $18,000 was sustained.

In the case of *Coleman v. Southwick,* 9 Johns (N. Y.) 45, 6 Am. Dec. 253, Chancellor Kent laid down the rule as follows:

"The damages, therefore, must be so excessive as to strike mankind, at first blush, as being, beyond all measure, unreasonable and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line; for they have no standard by which to ascertain the excess."

We think this is a sound rule, and approve the same. This is in harmony with the holding in the case of *C., R. I. & P. v. Devore,* 43 Okla. 534, 143 Pac. 864.

Finding no prejudicial error in the record, the judgment of the trial court is affirmed.

All the Justices concur.