## Cornelius *v.* Hambay, Appellant.

[Marked to be reported.]

*Criminal Conversation—Punitive damages—Precedents.*

The settled rule of the state being that a husband may recover punitive damages for the debauching of his wife, not only by way of compensation but by way of punishment, to deter the defendant and others from offending in like cases, the Supreme Court will not change the rule. WILLIAMS and GREEN, JJ., dissenting.

*Illicit intercourse—Evidence—Inference.*

In an action for criminal conversation, the fact that defendant and plaintiff's wife visited a hotel late at night and remained there several hours, is a circumstance from which the jury may infer illicit intercourse.

*Witness—Interest—Comment of court.*

In view of the present condition of the law of evidence, it is proper for the court to call the attention of the jury to the personal interest of a party to the record who testifies.

In an action for crim. con., it is not error to charge that defendant " is interested in swearing, if there is any such thing as honor or moral right that would excuse falsehood, not only to that which would relieve himself but will protect his paramour," plaintiff's interest having also been commented upon.

*Testimony of husband as to wife's adultery.*

In an action by a husband for criminal conversation, the husband is not a competent witness as to the wife's adultery.

Argued Nov. 4, 1890. Appeal, No. 82, Oct. T., 1890, by defendant, from judgment of C. P. No. 1, Allegheny Co., March T., 1889, No. 514, on verdict for plaintiff. Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Trespass for criminal conversation.

The facts appear by the opinion of the Supreme Court and the charge of the court below. At the time of trial, plaintiff had applied for a divorce and was not then living with his wife.

Plaintiff was permitted to testify, under objection and exception. [1]

The court charged, *inter alia*, as follows by STOWE, P. J.:

[" I now refer to the time they were at the theatre and went up to what is called the Greenwood Hotel. If that is true, if it is true that this man and woman went into that house that night, where he does not pretend, and where nobody can justify their being at that late hour—11 or later at night—and staid there for two or three hours or more, then it is for the jury to say, if those facts are true, whether or not, in accordance with our observation, a reasonable conclusion would not justify the belief that illicit intercourse had taken place there.] [2] But the reason I mention this particularly is that the jury may look carefully at that point of the case, so far as the testimony is concerned. The testimony upon that subject comes, so far as it is absolute, from the plaintiff alone. On the other hand we have the defendant, and we have the plaintiff's wife. [The defendant, of course, is interested in swearing, if there is any such thing as honor or moral right, that would excuse falsehood, not only to that which would relieve himself but will protect his paramour.] [4] On the other hand the plaintiff is just as deeply interested in convicting the defendants of the charge he makes against them . . . . McElhaney says he was standing by Manning's Hotel on the pavement; that he met Cornelius there, that he knew him before; that a woman and a man came along—that is the effect of it—that woman was Cornelius' wife—he knew her before, he says; the other man he did not recognize, did not know anything about him, had never seen him before, and never saw him afterwards until these troubles commenced and Cornelius told him that that was the defendant in this case; he could not now recognize him with any degree of certainty; he thought this was the man. [Now, so far as that one fact is concerned, throwing out the parties for the present, and considering one side worth just as much as the other, the whole charge so far as this one act which would fix criminality on the defendant, if it oc-

curred, all rests on the testimony of this man, McElhaney. If, however, you think, taking it altogether, it can be relied upon and believed, and conclude to your own satisfaction that the parties who were in the Greenwood Hotel that night were Mrs. Cornelius and the defendant, then, as I said before, it is for you to draw your own conclusions; and if you think or believe what one would naturally infer occurred on such an occasion, the debauchery of the wife, the plaintiff would be entitled to a verdict.    The amount of it I will refer to presently.] [2] . . . .

["Under all these circumstances, if the jury find that the defendant has done this wrong, it is for them to say, in view of what has occurred, and with a view to deter not only the defendant, but other parties from offending in like cases, to impose such a verdict as would be reasonable and proper, not only by way of compensation, but by way of punishment."] [5]

Verdict for plaintiff for $2,000, reduced by the court to $500, and judgment thereon, whereupon defendant appealed.

*Errors assigned* were (2–5) charge and (1) ruling on evidence, quoting the charge as in brackets, and the bill of exception as above.

*A. M. Imbrie*, with him *T. M. Marshall*, *W. D. Moore* and *F. C. McGirr*, for appellant.—In addition to cases cited in opinion of Supreme Court: Com. v. Gordon, 2 Brews. 569; Com. v. I. F., 12 W. N. 108; Gilchrist v. Bale, 8 Watts, 355, a crim. con. case; and Com. v. Jailer, 1 Gr. 218.    That the husband and wife were not living together and that the husband had applied for a divorce, does not change the rule.

Mere entry of the hotel will not warrant an inference of illicit intercourse, in the absence of registry, taking a room or improper acts.

The charge covered by the 4th assignment lessened the effect of defendant's testimony.    The jury must have understood that there was a rule of morals or demand of honor that would justify a defendant to commit perjury to protect his paramour in a case like this.

The instruction as to damages left the jury without any guide, and allowed them to render a verdict to deter others from offending in like cases.    Compensation is the measure

laid down in Sherwood v. Titman, 55 Pa. 77.   To same effect is 2 Gr. Ev., p. 235, 13th ed., § 253, note.   Vindictive damages should be limited to the wrong inflicted on plaintiff only: 7 A. & E. Enc. L., p. 448, note 2; Ibid., pp. 450, 451, text, and cases cited in notes, where the question is elaborately discussed.

*William H. McGary, John S. Robb* with him, for appellee.— Plaintiff's incompetency is unsupported by authority.   1 Gr. Ev. 337 ; Dickerman v. Graves 6 Cush. 308 ; Ratcliff v. Wales, 1 Hill, N. Y. 63, decide the husband competent.

There is nothing to answer in assignments 2–4.

In crim. con. cases, damages large and exemplary may be given : 2 Bl. Com. 138.   This principle is as old as the law itself.   Punitive damages are penal in their nature, to deter others from like acts ; in crim. con. cases not merely to compensate the husband, but to protect the family.   Exemplary damages, smart money and fines imposed at the suit of the people depend upon the same principle.   Both are penal and intended to deter others from committing like crimes.   Damages for the sake of example is as old as the hills, and juries are daily charged to find them in such cases.   In actions for seduction, slander and the case at bar, there is no measure of damages for a jury, but they are inflicted wholly with a view to punish and make an example of defendant, that others may be deterred: McBride v. McLaughlin, 5 Watts, 375.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

The decision of this case has been delayed for reasons not personal to the writer.

The suit was brought by the plaintiff in the court below against the defendant to recover damages for debauching his (the plaintiff's) wife.   The jury found for the plaintiff in the sum of $2,000, which the court subsequently reduced to $500, and the verdict thus reduced was accepted by the plaintiff. This belongs to a class of cases in which the plaintiff has been allowed from time immemorial to recover punitive damages. Hence we cannot sustain the fifth specification in which it is alleged that the learned judge erred in applying this principle. In view of the fact that it is the settled rule of this state, and so understood by nearly every practitioner, we do not care to enter into a discussion of the controversy upon this subject

which has recently arisen between some of our text-writers. Those who are curious in regard to it are referred to the second volume of Greenleaf on Evidence, and Sedgwick on Damages, where pretty much everything that can be said on either side may be found.

We find nothing to condemn in those portions of the charge embraced in the second and third specifications. If · the defendant and the plaintiff's wife visited the Greenwood Hotel late at night, and remained there for two or three hours as testified to by some of the witnesses, it was a circumstance from which the jury would have the right to draw an unfavorable inference, and this was substantially what the learned judge said to them.

The fourth specification alleges that the learned judge erred in instructing the jury that: " The defendant, of course, is interested in swearing, if there is any such thing as honor or moral right that would excuse falsehood, not only to that which would relieve himself, but will protect his paramour."

While this instruction is not sugar-coated, we cannot say it was error.   The learned judge below had the right to call the attention of the jury to the fact of the nature of the defendant's interest.   He had not only the pecuniary interest common to defendants in other cases, but he had also his own reputation and the reputation of the woman who was charged to have been his paramour at stake.   When therefore the learned judge told the jury that he was not only interested in swearing to what would clear himself, but also the woman, he said nothing but the truth, and what all experience shows to be true.   On the other hand the learned judge called the attention of the jury in equally vigorous language to the interest of the plaintiff as tending to affect his credibility.   In view of the present condition of the law of evidence, it is entirely proper for the court to call the attention of the jury to the personal interest of a party to the record who goes upon the stand as a witness.

The first specification is more serious.   The counsel for the defendant objected to the competency of the plaintiff as a witness.   He was called to prove the criminal intercourse of his wife with the defendant; in other words, to prove her adultery.   It is true, his wife was not a party to the record, but the object and effect of his testimony was to criminate her.   I am not aware that any of our Acts of Assembly enlarging the com-

petency of witnesses permits husband and wife to testify against each other except in the case of personal injuries inflicted by the one upon the other, and in certain cases in divorce. And the rule which excludes such testimony does not depend upon the party criminated being a party to the record. The principle of the rule which excludes husband and wife from testifying against each other, requires its application to all cases in which the interests of the other party are involved; and therefore the wife is not a competent witness against any co-defendant tried with the husband if the testimony concern the husband, though it be not directly given against him. Nor may she in such a suit between others, testify to any matter for which, if true, her husband may be indicted. 1 Greenleaf on Ev., 334 and 335; Pringle v. Pringle, 59 Pa. 281; Stewart v. Johnson, 18 N. J. L. 89; Stein v. Bowman, 13 Peters, 209; Kelly v. Drew, 12 Allen, 107. The fifth section of the Act of May 23, 1887, P. L. 159, provides : " Nor shall husband and wife be competent or permitted to testify against each other, except in those proceedings for divorce in which personal service of the subpœna or of a rule to take depositions has been made upon the opposite party ; or in which the opposite party appears and defends, in which case either may testify fully against the other, and except also that in any proceedings for divorce either party may be called merely to prove the fact of marriage." The rule that husband and wife shall not testify against each other, extends, as before observed, to testimony by the one which tends to criminate the other, although not a party to the suit. The reason for it is the disturbance of the marital relations which would result from the admission of such testimony. This is the settled rule of the common law, and it has not been changed by any Act of Assembly, or by any decision in this state.

We are of opinion that it was error to permit the husband to testify in this case. He was an incompetent witness. The issue, and the only issue, involved the adultery of his wife. It was not competent for him to forge a single link in the chain of circumstances pointing to his wife's criminal conduct, and upon any other subject his testimony would have been irrelevant.

The judgment is reversed, and a venire facias de novo awarded.

CONCURRING OPINION BY MR. JUSTICE WILLIAMS.

I concur in the judgment entered in this case, but upon one question I find that I am not in accord with my brethren. I would go further than they are yet ready to go and sustain another assignment of error.

The learned judge of the court below instructed the jury that if they should find in favor of the plaintiff they might render a verdict for such sum as might seem reasonable and proper to them in order to accomplish the following purposes: (a) to make compensation to the plaintiff for the injury he had sustained; (b) to deter the plaintiff from committing the like crime in time to come; (c) to deter other persons from committing the same crime; (d) to punish the defendant for this crime.

The act for which the plaintiff sought to recover damages involved a private injury and a public offence; a violation of the civil rights of the plaintiff, and of the criminal laws of the state. It exposed him to two measures of punishment. One due to the private injury, another to the public offence. The first is imposed in the civil courts, at the suit of the party injured, and is for his private benefit. The second is imposed in the criminal courts at the instance of the public, and by way of the enforcement of the criminal law. This distinction is fundamental and prevails throughout the civilized world. The extent of the private injury, and the amount of compensation to which the injured party is entitled, are subjects upon which the finding of a jury is the legal measure. The grade of the crime, and the punishment to be imposed upon conviction, are fixed by the criminal code. When a maximum and minimum limit are prescribed, the intermediate point which the sentence shall adopt, is left not to the jury but to the judge. In view of the circumstances peculiar to the crime or the criminal he may exercise his discretion within the limits which the law has set. These two measures of punishment due to the different phases of the same act, administered by different tribunals, through radically different modes of procedure, and for different ends, ought not to be confounded. The criminal courts punish in order to preserve the public peace, protect the public morals and enforce the criminal law. The civil courts punish the violator of private rights by compelling him to repair the

wrong done; if not by the restoration of what he has taken, then by the payment of an adequate equivalent in money for the injury he has inflicted on the plaintiff. This equivalent, when ascertained, is the measure of the plaintiff's damages. Damages are a compensation given by a jury for an injury or wrong done by the party before the action brought: 3 Bac. Ab. 57. A compensation and satisfaction for some injury sustained: 2 Bl. Com. 438. A recompense for the wrong the defendant hath done the plaintiff: 2 Co. Litt. 257 a. A sum of money to be paid by one person to another as a compensation for a loss sustained in consequence of an injury committed by the former: Rap. & L. Law Dic. 336. " The damages shall be to him who sustains the loss: " 3 Comyn Dig. 347. In the code of Justinian the measure of the plaintiff's damages is said to be " the actual loss sustained." Judge Strong stated the rule thus: " Whoever does an injury to another is liable in damages to the extent of that injury." Dexter v. Spear, 4 Mason, 115. And our own court, with even greater precision, said in Bussy v. Donaldson, 4 Dallas, 206*: " It is a natural and legal principle that the compensation should be equivalent to the injury." Nowhere is the idea of punishment, or the protection of public morals, recognized as an element in the calculation of the amount of the plaintiff's damages. The question is, what is the character and extent of his injury? What sum of money is necessary to make him a fair equivalent for the wrong done him? The answers to these questions fix the amount of damages to which he is entitled.

At this point it must be remembered that damages may be awarded according to one or both of two standards or methods of calculation depending on the character of the wrong done and the circumstances surrounding it. The first of these is well defined in the Am. & Eng. Ency. of Law, vol. 7, page 449, as " the pecuniary loss which from its nature is capable of being estimated with entire or approximate accuracy." This standard is applicable to all ordinary actions of trespass for an injury committed without malice and without circumstances of aggravation. The other is the compensation due by reason of the circumstances of aggravation, which having no exact pecuniary measure must be left to the exercise of a sound discretion by the jury. Damages so ascertained are distinguished

from those that are capable of ascertainment with entire or approximate accuracy by describing them as punitive or exemplary damages, but they are nevertheless compensatory. Compensation for the loss of property, as of a house, an ox, a bushel of wheat, may be justly made by reference to the market price of the article lost or injured, and its amount may be fixed with as much certainty as that of any marketable commodity. It is for this reason that damages assessed in this manner are commonly and naturally spoken of as compensatory damages. But pain, shame, sorrow or disgrace have no market value. There is no commercial standard by which a price can be put upon them that shall be recognized as an approximately accurate equivalent in value. Nevertheless it is very plain that something is due to him who suffers, from him who has wickedly or recklessly inflicted the suffering. As the amount of compensation cannot be fixed by reference to a definite standard of value, it must be left to the jury to fix in view of the circumstances. Hence such damages have been described as " smart money," vindictive, punitive or exemplary damages, to distinguish them from such as are assessed upon the other basis. It would not be very wide of the truth to distinguish between these measures of compensation by saying that one fixes the amount by a business standard, the other by a moral standard. One looks only at the market value of the article injured or destroyed. The other looks at the motive and the manner of the defendant, and the nature of the injury inflicted. Compensation resting on a consideration of the circumstances of aggravation involves necessarily the idea of punishment for the malice or negligence of the defendant and may be properly enough spoken of as having a punitive effect. Damages assessed upon this basis demonstrate that the law regards the quality of an act as well as the act itself, and that for this reason, if for no other, every man should deal justly by every other. In this sense the damages may be properly spoken of as exemplary. These results however are incidental. The action is brought by the plaintiff to redress a wrong done to him. The verdict fixes the pecuniary equivalent of that wrong. The sum so fixed belongs to him. The court and jury have nothing to do with the public offence. They cannot inflict the punishment which the law prescribes for it, because they have no jurisdiction over it. Their powers and duties do

not, they cannot, extend beyond the lines that bound the private controversy between the parties litigant; and whatever punitive effect the verdict and judgment may have is the consequence of the proper adjustment of the relative rights and liabilities of the parties before them. The crime committed against the plaintiff as distinguished from that committed against the state is the subject of the action. It is punished by an ascertainment of the amount of compensation that should be made. The crime against the state goes to another tribunal and is punished according to the directions of the penal code. The fault with the direction given by the learned judge of the court below is that it is indefinite, and leaves the jury to infer that they may consider and punish the crime against the public as well as that against the plaintiff.

It is urged that similar expressions to those we are now considering are frequently to be met with in the courts, and that this court has approved and adopted them as correctly defining the powers of the jury in such cases. I do not deny that several cases may be found in which words like those made use of in this case have been used by judges of this court in distinguishing between the two measures or methods of computing damages, and in upholding the right of the plaintiff in the case then under examination to recover exemplary damages. I do distinctly deny however that the point now brought to our attention has been considered and determined in accordance with the action of the court below. The jury should know the extent of, and the limitations to, their power in the assessment of damages. The defendant has a right to insist that he cannot be constitutionally punished for a crime in a court which has no jurisdiction over it, and whose judgment he cannot plead when he is called upon to answer in the proper tribunal. The jury should have been told that they had no concern with the punishment of the defendant for his crime against the public; and that they should only consider the private wrong done the plaintiff, and in the exercise of a reasonable discretion give him such a pecuniary equivalent therefor as in view of all the circumstances might seem to them just. I would reverse for this reason if there was no other error appearing on the record.

MR. JUSTICE GREEN.—I concur in the above.