### UNITED STATES v. KNOELL et al.

#### (District Court, E. D. Pennsylvania. March 3, 1916.)

#### No. 64.

1. CRIMINAL LAW &#10154;742—TRIAL—QUESTIONS FOR JURY—CREDIBILITY OF TESTIMONY.

    The credibility of uncorroborated witnesses, who have been convicted of crime, is for the jury, and must be submitted.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1098, 1138, 1719–1721; Dec. Dig. &#10154;742.]

2. CRIMINAL LAW &#10154;935—NEW TRIAL—GROUNDS—SUFFICIENCY OF EVIDENCE.

    A conviction, based on the uncorroborated testimony of witnesses who have been convicted of crime, will not be set aside on motion for new trial, unless in the judgment of the court the conviction was unjust.

    [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2193, 2194, 2297, 2298, 3068; Dec. Dig. &#10154;935.]

&#10154;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. WITNESSES ⊕106—COMPETENCY—WIFE OF CONSPIRATOR.
  The wife of a co-conspirator with defendants on trial is competent to testify as to facts which do not involve her husband in any way.
  [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 415–424; Dec. Dig. ⊕106.]

4. CRIMINAL LAW ⊕406—EVIDENCE—DECLARATIONS—FORMER TESTIMONY.
  In a prosecution for conspiracy, the admission in the present prosecution of evidence of the testimony of a defendant, given to support a fraudulent claim involved in the conspiracy, before a referee in bankruptcy, is not error.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 785, 894–917, 920–927; Dec. Dig. ⊕406.]

5. CONSPIRACY ⊕47—OFFENSES AGAINST BANKRUPT LAW—EVIDENCE.
  In a prosecution for conspiracy, evidence *held* to sustain an allegation of the indictment of the receiving of property of a bankrupt after petition filed.
  [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 105–107; Dec. Dig. ⊕47.]

6. CRIMINAL LAW ⊕921—NEW TRIAL—GROUNDS—ADMISSION OF INCOMPETENT EVIDENCE.
  Where no objection was made to the admission of incompetent testimony of one of the defendants incriminating his wife, though the attention of able counsel for defendants was called to the matter by the court, the admission of such evidence is not ground for new trial.
  [Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2206–2209; Dec. Dig. ⊕921.]

John Knoell and another were convicted of conspiracy, and move for a new trial. Motion overruled, with leave to United States to move for sentence.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

William A. Gray, of Philadelphia, Pa., for defendants.

DICKINSON, District Judge. This motion is based upon a number of reasons. Some of them may be grouped in classes, and others do not call for discussion. We will take them up as raising the questions which counsel for defendants has discussed, but in a different order.

[1.] Several of the reasons go to what may be called the abstract justice of the case. Is the verdict just? The basis of this question is the source of the incriminating evidence. It is admittedly tainted. The chief witnesses, and indeed all the witnesses, whose testimony was not confined to facts which required only formal proof, were smirched with self-confessed crimes of the most detestable character. The testimony of none of these witnesses had other support than that of the testimony of other witnesses as unreliable as themselves. It is, of course, conceivable that the testimony of the vilest witness may be true ·in a particular case or as to particular facts. The course of the trial may be such as to force a conviction of guilt, notwithstanding every abhorrence of the source of the evidence. Such was the present case. The jury gave the evidence a most careful, intelligent, and conscientious consideration. The reasons which to the minds of the jury

compelled the finding made can be readily understood. It cannot be said that a mistake was made.

This brings us face to face with the question whether a wise general policy of the law will be denied its logical results in a particular case. The answer must be in the negative, because the idea of impartial universality in its application is of the very essence of the idea of a law. This further brings us to the question of what is the law of the United States on the subject of convictions founded only upon tainted evidence. We waive the subsidiary question of the duty of the trial judge to warn the jury of the danger of the acceptance of such testimony because we are bound to find this duty to have been fully met. Does the law lay its injunction upon the jury to disregard such testimony, or may they convict upon it alone? The law of the United States is that the credibility of such testimony is for the jury and must be submitted. Richardson v. United States, 181 Fed. 1, 104 C. C. A. 69.

[2] The proper reluctance of the courts, in the enforcement of a wise policy, to permit a conviction so based to stand, is overborne by a verdict which gives credence to such testimony, unless this is in turn overborne by the judgment of the court that the conviction was unjust. This finding, as already stated, we cannot make.

We are next led to consider the complaints of specific errors by the court.

[3] The second question discussed is whether Rose Turetz, the wife of one of the conspirators, was a competent witness. The distinction between the general competency of a witness and the admissibility of the testimony or competency to testify to particular facts is one which in his rulings the trial judge made an effort to observe. The husband in this case was not on trial. He had been eliminated by his plea of guilty. The wife was not, therefore, testifying against her husband on the face of the record, and was in consequence not incompetent generally. Her testimony, moreover, was confined to facts affecting only the defendants on trial. This distinction was made with the thought in mind of confining the objection to its real grounds.

We are in accord with the expressed views of counsel for defendants that the incompetency is not limited to cases in which the husband is on trial. Such a restriction would leave the principle shorn of its real and true value. It is founded upon a wise policy of the law, and its application should be broad enough to subserve the purpose intended. This is that the wife will not be heard to give testimony which directly incriminates the husband, or to appear against him in a case to which he is a party, or in a case such that a verdict in accord with her testimony will carry the necessary implication of his guilt. If the charge is such as in Cornelius v. Hambay, 150 Pa. 359, 24 Atl. 515, that the guilt of the party to the record necessarily involves the spouse of the witness, he or she cannot testify.

There is no such relation here between the husband of the witness and the defendants. We, of course, know as a fact that the husband was equally guilty with them; but (and this is the important distinction) we do not learn this from the testimony of the wife, nor does their guilt of itself in any way imply his. The husband is in no way concerned until we learn from others the facts which bring him into

the conspiracy. The distinction is clearly brought out by the differ-
ence between the position of the wife and the husband here. The wife
might have testified (indeed, under the restrictions imposed, she was
required and did so testify) to the guilt of the defendants on trial with-
out in any way implicating her husband. The guilt of each is just as
distinctly a different thing as if she had testified to the guilt of de-
fendants on trial charged with burglary, and it had been learned
through the testimony of others that her husband was guilty of like
crimes.

The test is: Does her testimony incriminate him, either directly or
by necessary implication? She did not directly implicate him, because
all such testimony was carefully excluded and her testimony was con-
fined to the defendants. It is clear that their guilt did not necessarily
implicate or involve him. His testimony, however, did directly and
by necessary implication involve her. In the first place, the charge di-
rectly involved her. In the second place, the charge was of such a
nature that the guilt of any one necessarily involved her. The hus-
band was clearly incompetent. No objection, however, was made to
his testimony. Objection was interposed to the testimony of the wife.
We are unconvinced that there was any error in admitting her to testi-
fy within the limits to which her testimony was confined. The admis-
sion of the testimony of the husband will be considered later. We
pass it for the present, to take up some of the other points made.

[4] One is that which counsel present as the first. It is based upon
the use of statements which the defendants had made before the ref-
eree. It is true the statements were made in the course of testimony
delivered under oath. They were none the less statements, and volun-
tary ones, and we are able to see nothing more in the use made of them
than the use which is always made of incriminating declarations of a
defendant. There is a well-justified expectation that courts will frown
upon all attempts to fritter away constitutional rights, and that they
will preserve to all persons the real values which those rights confer.
Such rights are, however, clearly not involved in some situations. A
person is indicted for conspiracy. The conspiracy involved a fraudu-
lent claim before a referee in bankruptcy and testimony in support of
it. The defendants had so testified. On the conspiracy trial the tes-
timony thus given becomes of evidential value. How can the consti-
tutional right be said to be involved?

There is a ground of exclusion of incriminating statements some-
what akin to the constitutional ground. A familiar instance is a con-
fession secured by promises of immunity or through threats of pun-
ishment. Neither ground appeared in this case. We quote from the
brief of defendants the statement that at the time the testimony was
given there was no thought of the prosecution of the defendants. They
were not, therefore, in any sense called to testify against themselves.
It was their right to refuse to testify to any incriminating facts. It is
true that the use of this testimony in a prosecution against them re-
sults in their bearing testimony against themselves in the same sense
in which any declaration made by them would be self-condemning.
The excluding ground must therefore be the same in the one case as
in the other. It might be well if the law made testimony given in ju-

dicial proceedings inadmissible, except when it became the basis of a charge of perjury. We are, however, not persuaded that the trial judge would have been justified in ruling such to be the law.

[5] The questions which counsel have classified as the fifth and sixth are interdependent. So far as they go to the sufficiency of the indictment, they were disposed of when the court, through Judge Thompson, overruled the demurrer interposed to the fourth and fifth counts. That part of the law of this case was then settled. The point, of course, remains that there was no evidence to support the fourth count, and as the offense involved in the fourth count is included in the fifth, this retains also the point that the fifth count is alike unsustained. The point is pivoted upon the feature that the offense which figures in the fourth count is that of receiving property of the bankrupt *after* petition filed, and the assertion that all the evidence was directed to transactions before the filing of the petition. It was filed November 23, 1914. There was evidence that on November 21st property of the bankrupt was placed in the keeping of a man by the name of Rash. Had this been all the proofs showed, it clearly would not have justified a finding that property had been received after November 23d. This was, however, not all which was proven. The property was received by the defendants after the date of filing. The November 21st transaction really went only to the proof that the property which the defendants afterwards received was property of the bankrupt. The charge, be it remembered, is one of conspiracy. The offense was to be accomplished in the way set forth in the indictment. The proofs closely followed the facts averred. We do not, therefore, feel at liberty to find there was no evidence to support the charge.

[6] The only remaining reason urged is the incompetency of the husband of the bankrupt to testify. We entertain no doubt of his incompetency. It may be explained in passing that not only was no objection interposed to his testimony, but he was the first or an early witness called. The full facts of the case had not then been disclosed. He was heard by the court under the impression that he was himself the bankrupt. Later it developed, or at least came to the attention of the trial judge, that the wife was the bankrupt. At once the thought of his incompetency arose and was presented to counsel. The notes of testimony do not show just what took place, but it was made clear that the absence of objection was not an inadvertence, and no motion to strike out was made. As the defendants were represented by counsel of experience and ability fully equal to the discharge of the duty of safeguarding the interests of their clients, the trial judge did not see his way clear to further interfere. The point now made. is very strongly, and yet very fairly, expressed by counsel thus:

"Though it appears that his [the husband's] competency was not raised at the trial, still it is respectfully submitted, if he was incompetent, the court should in its discretion * * * not sustain a conviction based upon testimony incompetent under the law."

We feel the power of this appeal, and admit that it has caused us to waver in our judgment of the proper conclusion to be reached. It is beyond dispute that the court should, at whatever cost, preserve to

defendants all their rights. That is not, however, the whole duty of the court. A like regard is the due of the public, whose laws have been found to have been violated, and to the orderly administration of justice. We hold that measure of the ability of counsel as to credit them with the exercise of good judgment in the course they took, although the reasons for that course do not on the surface appear. The evidence was in the case without error of law. It was submitted to the jury without complaint of unfairness or inadequacy in the charge. It was passed upon by the jury, we are convinced, in the spirit of men conscientiously striving to do their full duty, and, in the absence of errors of law, we cannot see our way to impeach the verdict.

The answer to the present complaint of the defendants is summed up in this observation: Had the jury, out of deference to the general policy of the law that tainted testimony should be regarded with suspicion and scrutinized with the utmost care, been able to entertain a reasonable doubt of defendants' guilt and in consequence had acquitted them, the verdict would have had support in the facts which impeached the credibility of the witnesses who testified to guilt. The charge impressed this duty upon them. We cannot refuse the inference that the jury found themselves, notwithstanding, unable to entertain a doubt of defendants' guilt, and the court is in its turn unable to find that such a conclusion is without support in the evidence.

The motion for a new trial is overruled, and the United States has leave to move for sentence to be imposed upon all who stand convicted of the offense charged.