### POTTER v. WOMACH.

No. 7542—Opinion Filed July 11, 1916.

Concurring Opinion Feb. 6, 1917.

Rehearing Denied Feb. 6, 1917.

(162 Pac. 801.)

1. **Witnesses — Husband and Wife — Action for Alienation of Affections—Evidence.**

In an action by a husband for damage for the alienation of the affections of his wife and her seduction, he is a competent witness except concerning transactions or communications had by him with his wife.

2. **Trial—Disjunctive Instruction.**

Instructions examined, and held to fairly state the law applicable.

(Syllabus by Bleakmore, C.)

Error from District Court, Noble County; W. M. Bowles, Judge.

Action by D. C. Womach against Ollie Potter. Judgment for plaintiff, and defendant brings error. Affirmed.

Parker & Simons, for plaintiff in error.

P. W. Cress, for defendant in error.

Opinion by BLEAKMORE, C. This is an action against Ollie Potter commenced in the district court of Noble county by D. C. Womach to recover damage for the alienation of his wife's affections, her seduction, and loss of her society, etc. The parties are referred to here as they appeared in the trial court. There was trial to a jury resulting in judgment for plaintiff, and defendant has appealed.

Over objection to his competency as a witness, plaintiff was permitted to testify to an act of intercourse between his wife and defendant; and this is assigned as error.

By statute (Rev. Laws 1910) it is provided:

"Sec. 5046. No person shall be disqualified as a witness in any civil action or proceeding, by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime; but such interest or conviction may be shown for the purpose of affecting his credibility."

"Sec. 5050. The following persons shall be incompetent to testify: * * *

"Third. Husband and wife, for or against each other, except concerning transactions in which one acted as the agent of the other, or when they are joint parties and have a joint interest in the action. * * * "

By virtue of the latter section it is contended that plaintiff was incompetent to testify as a witness in his own behalf. It is argued that, although not made a party to the action, the interests of the wife were involved therein and affected by the judgment, and that the husband was erroneously permitted to testify against her; and as evidencing a legislative construction of the foregoing provisions, and an intent to absolutely exclude the testimony of either husband or wife which might affect the interests or tend to criminate the other in all cases save those for divorce, defendant cites section 4978, Rev. Laws 1910, which provides:

"In any action for divorce hereafter tried, the parties thereto, or either of them, shall be competent to testify in like manner, re-

specting any fact necessary or proper to be proven, as parties to other civil actions are allowed to testify."

Defendant also relies upon Cornelius v. Hambay, 150 Pa. 359, 24 Atl. 515, where the Pennsylvania court, construing a similar statute, held the husband disqualified as a witness to prove criminal intercourse of his wife with defendant in a like action.

Our statute was adopted from Kansas. Construing it, the Supreme Court of Kansas, in Roesner v. Darrah, 65 Kan. 599, 70 Pac. 597, held:

"In an action by a husband for damages for alienating the affections of his wife and for her seduction, he is a competent witness except as to transactions or communications had by him with his wife."

In the opinion it is held:

"The defendant below, the defendant in error here, places a literal construction on section 323 of the Civil Code (Gen. Stat. 1901, sec. 4771), which reads: 'The following persons shall be incompetent to testify: .* * * Third, husband and wife, for or against each other,' etc. He says that this statute does not merely disqualify husbands and wives from testifying for or against each others' claims to the subject-matter in litigation, but disqualifies them as well from testifying to each others' personal character, conduct, status, or other matter in interest, whether they be parties to the litigation or not, and whether the judgment rendered would put the character, conduct, status or matter in interest in the category of res judicata or not. In other words, the contention is that, inasmuch as the litigation involved the subject of the wife's fidelity to the husband, and inasmuch as she, though not a party litigant, was incompetent to testify for or against him, he, though a party, was equally incompetent to testify against her. This contention derives support from some of the decisions, a principal one of which is Cornelius v. Hambay, 150 Pa. St. 359, 24 Atl. 515. It was there held, in a case of the character of this one, that a husband was incompetent to testify to the adultery of his wife, although she was not a party to the suit. That holding was made under a statute like ours. It may be that the decision was satisfactorily reasoned, so far as that one statute was concerned, but in this state we have, in addition to such statute, another one of material significance. Section 319 of the Civil Code (Gen. Stat. 1901, sec. 4767) reads: 'No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise,' etc. This statute abrogates the common-law rule of disqualification to testify because of interest, and, except as limited by other statutes in pari materia, makes every person competent to give evidence in any case. The limitation contained

in the third subdivision of section 323 of the Civil Code, supra, does not apply in such a case as this. That applies only to prohibit a husband or wife, when not a party to the suit, from testifying for or against the other one who is a party; not to prohibit the one who is a party from testifying for or against the other one who is not. This statement of the general rule is not intended, of course, to be inclusive of those exceptions which the statute itself makes, and which exist in that part of it not above quoted. The language of the opinion in Higbee v. McMillian, 18 Kan. 133, while not having relation to a state of facts identical with those in this case, nevertheless declares a principle applicable to the general question, and definitely and positively settles the rule against the contention of the defendant in error. See, also, Van Fleet v. Stout, 44 Kan. 523, 24 Pac. 960."

This construction of the statutory provision in question is, in our opinion, logically correct. Plaintiff was a competent witness to the facts concerning which he testified.

Defendant also assigns as error the embodying of the italicized words in the following charge to the jury:

"You are the sole and exclusive judges of the facts, the weight of the evidence and the credibility of the witnesses, but you are bound by the law as given you by the court; in determining the weight or credit you will give to the testimony of each of the witnesses who have testified before you, you may take into consideration their conduct and demeanor on the stand and in the presence of the jury, their bias or prejudice, if any have been manifest, the probability or improbability of their stories, their relationship to the parties in the case, their means of information and opportunities of knowing about matters concerning which they have testified, their interest or lack of interest in the result of this suit, and all other facts and circumstances in evidence **or coming to your observation during the trial.**"

It is contended that the jury in arriving at a verdict, by virtue of the language employed, was authorized to consider facts and circumstances not in evidence, but otherwise coming to their observation during the trial, and it is insisted that inasmuch as it was alleged and attempted to be proved that the intimate relations between defendant and the wife of plaintiff had existed for some six or seven years, that such instruction was peculiarly prejudicial in the light of certain circumstances attendant upon the trial, in this, that plaintiff and defendant each had a child about four years of age present at the hearing, and that these children were dressed alike and bore a striking resemblance to each other, which was noted and commented on by the jurors when considering the case in the jury room, as appears by the testi-

mony of two members of the jury given on the hearing of the motion for new trial. Relative to this assignment of error, defendant in his brief says:

"It is proper, of course, to instruct the jury that they may take into consideration all other facts and circumstances in evidence, but it was absolutely erroneous to instruct the jury that in addition to the facts and circumstances in evidence they may take into consideration all other facts and circumstances coming to their observation during the trial. It is to be noted that these two clauses are connected by the disjunctive 'or,' instead of their conjunctive 'and,' so that by the language used the trial judge told the jury that they could consider facts and circumstances which came to their observation during the trial, outside of such facts and circumstances as were in evidence."

We are not favorably impressed with the contention of defendant as to the effect of the language employed in the instruction. It is unlikely that the jurors in considering their verdict were influenced by the verbal inaccuracy imputed to the charge; but on the contrary, it is probable that they viewed the facts and circumstances of the case as reasonable men, without undue regard to the use of a disjunctive instead of a conjunctive conjunction, and arrived at the same conclusion which would have been reached had the court employed "and" rather than "or" in the portion of the instruction of which complaint is made.

Relative to a similar instruction it was said by the Supreme Court of Nebraska, in Jessen v. Donahue, 4 Neb. (Unof.) 838, 96 N. W. 639:

"Another objection to this instruction is based on the closing paragraph. The defendant insists that in the use of the words, 'and the surrounding circumstances appearing on the trial,' the court erred, because it did not limit the jury to the consideration of such matters as were directly connected with the testimony offered on the trial. We do not think this objection well founded. The phrase, 'circumstances appearing on the trial,' is the equivalent of 'circumstances shown on the trial,' and we do not think a jury of ordinary intelligence, after having been instructed that the complainant was required to establish her charge by a preponderance of the evidence, were at all likely to have inferred that they were at liberty to take into account matters not shown in the evidence."

We are of opinion that the instruction complained of was substantially correct, and that the rights of the defendant were not prejudicially affected thereby.

An examination of the entire record discloses that the judgment is sustained by the evidence, and the instructions fairly state the law applicable.

No reversible error appearing, the judgment should be affirmed.

By the Court: It is so ordered.

THACKER, J. (concurring). The plaintiff in error will be designated as defendant, and the defendant in error as plaintiff, in accord with their respective titles in the trial court. The plaintiff, upon the trial, in January, 1915, recovered a verdict and judgment against the defendant for $5,000 as damages for his loss and injury sustained as the result of illicit relations, including sexual intercourse, between the defendant and the plaintiff's wife during a period of nearly seven years, commencing on December 18, 1907, and ending on March 21, 1914, three days before this action was commenced. The plaintiff and the defendant are first cousins, and the defendant's sister is the stepmother of the plaintiff's wife. All the parties in any way involved resided in the town of Billings during the period mentioned except about the first year of the same, and, it seems, resided there at the time of the trial.

The plaintiff testified in effect that on March 21, 1914, he went out from his home into the town of Billings at about 7 o'clock in the evening, and, upon his return at about 8:30 o'clock, he first heard and then, upon going with as little noise as he could upon his back porch, saw through the glass door in his lighted dining room the defendant and plaintiff's wife in the act of sexual intercourse on a couch in that room that stood across the door, whereupon he went to another door and entered the room through his kitchen in time to see his wife getting up from the couch and a door close behind defendant who had gone thence into another room; and that before the defendant had replaced and arranged his clothing he followed him into the latter room, leaving open the door between it and the room where his wife was, and, denouncing him in her presence for the act in which he had been discovered, the plaintiff told him (the defendant) that he had caused a separation of himself (the plaintiff) from his wife, and ordered him (the defendant) to leave the house and never return. The plaintiff further testified that he has lived separate and apart from his wife since that night, although he spent the two next succeeding nights in the house with her and was present on the second day after his discovery, when the defendant, in deference to the phone call of the plaintiff's wife, came to the house, and in response to her demand for financial reparation for having ruined her life and caused her husband to leave her, declined to make the same upon the ground of financial inability. The plaintiff also admit-

ted that he has on several occasions since then gone to the house, where his wife continued to reside, but explained that it was "to see the children."

Two sisters of the plaintiff, living or staying in the town of Billings, testified, upon the trial of the case, each to two or more occasions on which she chanced to be in the home with plaintiff's wife in his absence when defendant came to or in the house, and, among other things, inquired for the plaintiff upon discovering that his wife had company. According to one of these sisters, on one of these occasions, and apparently before the commencement of the period of illicit intercourse mentioned, the defendant entered a room in which the plaintiff's wife was alone and told her he guessed he would kiss her, but she answered by saying that she guessed he would not; the witness being in an adjoining room at the time. According to the other sister, on one of these occasions, while she was lying on a bed with her head near a window in plaintiff's home, the defendant came to the window at about dusk and, mistaking her for plaintiff's wife, asked if he could come in, which the witness resented, after which he explained that he thought she was "Edith" (plaintiff's wife), and inquired for the plaintiff.

The defendant admitted that, on the night of March 21, 1914, he was in plaintiff's home with the plaintiff's wife when the plaintiff came in, and that after asking him "what in the hell" he was doing there, the plaintiff ordered him to leave; but the defendant had lost his hat some time in the previous month, and plaintiff had informed him that it was at his house some time before the night in question, and, denying any improper relation or conduct with her, explained his presence in the house on that night by testifying that he went there for his hat, although he says he did not get it, and has never seen it since he lost it the month before. He testified that plaintiff called him to the house, and in the presence of plaintiff's wife demanded reparation in money of him on the second day after the night in question, and that he refused the demand without qualification.

The defendant admitted in effect that soon after the night in question he transferred his property, which was considerable, to his wife in anticipation of some action against him growing out of plaintiff's charge in the particular stated above. His testimony as to what was said and done between the parties and especially by himself on the night mentioned, as well as his testimony as to what was said and done on the second day thereafter, was not quite as full and explicit, nor directed, etc., as would ordinarily be expected under all the circumstances from

an innocent man of his apparent intelligence and freedom from fear of personal violence, although there was no self-incrimination. There was some testimony, pro and con, as to the defendant's general reputation in respect to the virtue of chastity. On the whole there is nothing in the state of the evidence to warrant the belief in this court that the verdict is probably untrue or otherwise unjust, although the possibility that it is, is apparent. To the contrary, it appears that the verdict is in accord with the preponderance of the evidence, although this preponderance may not be heavy.

A child of the wife of the plaintiff, purporting to be his own, about four years of age, and a child of the defendant by his own wife, about the same age and dressed somewhat like the former child, played together about the courtroom during the trial of the case. The defendant testified that a lady present in the courtroom during the trial was his own wife, and he was asked if he did not go to the last childbirth bed of plaintiff's wife and kiss her and refer to her child as his own, which he denied; but there was no other reference to these children or to either of them in the evidence, instructions, or argument. We assume under the facts shown that the plaintiff and the defendant, respectively, were responsible for the presence of the children in the courtroom.

Upon motion for a new trial, three of the jurors, produced as witnesses in support of the motion and in impeachment of their own verdict, testified in substance and effect that upon the first ballot ten jurors voted for and two against the verdict, and that after one of these two had joined the ten in voting for the same the attention of the single juror standing against it was called by a fellow juror to the resemblance of these two children; and there was some discussion of this fact, including a remark by a juror that the child purporting to be that of the plaintiff did not look like his child, but looked like the child of the defendant. After this discussion the single juror who stood against the verdict changed his vote and made the verdict unanimous. But it does not further appear how many of the jurors observed these children, observed any resemblance between them, had any knowledge of whose children they purported to be, or participated in or heard the aforesaid discussion; and it will be borne in mind that nine jurors may render a verdict.

Although it has been repeatedly held by this court that a juror will not be permitted to impeach his verdict by showing on what ground it has been rendered or that he made a mistake, misunderstood the law, or the

result of the finding (St. L. & S. F. R. Co. v. Brown, 45 Okla. 143, 144 Pac. 1075, and cases therein decided), I will assume for the purpose of this opinion that the testimony given upon the motion for a new trial in the instant case is competent evidence of the facts stated; and, in the main, it will also be assumed that more than three jurors, if not all of them, observed the two children, knew what has been here said as to whose children they were, and observed a resemblance between them; but the fact that evidence of such resemblance would have been admissible will be kept steadily in mind.

The petition for rehearing in this case is directed against the opinion of Commissioner Bleakmore only upon one of the two points involved and decided; but, as to this point, it is vigorously urged that this cause should be reversed because of error in the following instruction in question, and that there is error in the holding in that opinion that the law is fairly stated to the jury in the following paragraph of that instruction given in the trial court, to wit:

"You are the sole and exclusive judges of the facts, the weight of the evidence, and the credibility of the witnesses, but you are bound by the law, as given you by the court; in determining the weight or credit you will give to the testimony of each of the witnesses who have testified before you, you may take into consideration their conduct and demeanor on the stand and in the presence of the jury, their bias and prejudice, if any have been manifest, the probability or improbability of their stories, their relationship to the parties in this case, their means of information and opportunities of knowing about the matters concerning which they have testified, their interest or lack of interest in the result of this suit, and all other facts and circumstances in evidence **or coming to your observation during the trial.**"

The italicization is my own, and marks the portion of the instruction of which the defendant complains. A strict literal construction of the language italicized, authorized the jury, in determining the weight or credit to be given the evidence found in the testimony of the witnesses, to take into consideration not only their interest or lack of interest in the result of their action, their words, their demeanor, their bias, and prejudices, and the probability or improbability of the story of each, but "all other facts and circumstances in evidence or coming to (their) observation during the trial," from whatever source, thus including any resemblance that may have been observed between the two children mentioned, and, for further illustration of its scope, any possible manifestation by any bystander of belief or disbelief of the testimony of any witness and of interest in the result of the trial and the like.

But the effect of this error upon the decision in this court should be tested by the rule furnished by section 6005, Rev. Laws 1910, which reads as follows:

"No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probalby resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

It appears that the word "record," as used in this provision of our statutes, means the "record" in this court, and includes the evidence and all the questions of fact determined in the trial court.

This provision of our statutes was evidently intended to effect a material change in the pre-existing common-law rules for reviewing causes in this court to prevent reversals of just judgments; and unless it does authorize and require this court to re-examine the facts, and where necessary weigh conflicting evidence on pivotal points involved in ascertaining the probable effect of an error upon the justice of the case, notwithstanding such evidence may be sufficient to support or such as to permit a verdict for either party, no material change in the common law will follow.

It is well understood that where the evidence appears to preponderate against the verdict reviewing courts will reverse a cause for an error in the instructions which may have contributed to cause such a verdict, although such error might not otherwise be allowed to effect a reversal; and this provision of our statutes seems to establish the converse of this rule and to require an affirmance unless it appears from an examination of the entire record, including the ascertainment of what appears to be the weight of the conflicting evidence on the pivotal points, that such an error has probably resulted in a miscarriage of justice or violates a constitutional or statutory right.

The distinction between examining and weighing conflicting evidence on a pivotal point to ascertain its sufficiency to support the verdict and doing so incidentally for the purpose of ascertaining the probable effect of an error on the result of the trial is obvious. We assume that it will be conceded that neither a statutory adoption by a state of the common law in general terms nor a statutory requirement that the court shall instruct the jury as to his views of the law

will make that law or any right thereunder statutory within the meaning of such a statute as that now under consideration.

There is no statutory or constitutional provision relating to the question of the correctness or effect upon the result of the trial of the instruction under consideration, and no statutory or constitutional right, that is, no right either given or protected by any statutory or constitutional provision, is in any way violated by or involved in the error in that instruction; but, to the contrary, the right to have the trial court abstain from giving this or to have it give any other instruction upon the question of what the jury might consider in judging of the credibility of the witnesses and the weight to be given their testimony is ascertained by reference to and is given and protected only by the common law as understood and applied by the judicial department of the state government.

The analogy found in the following authorities will suffice to support this law, although no definition of such a right, that is in point here, has been found: 36 Cyc. 1257; Bigby v. Douglas, 123 Ga. 635, 51 S. E. 606, 607; Webber v. Salt Lake City, 40 Utah, 221, 120 Pac. 503, 504, 37 L. R. A. (N. S.) 1115; Menge v. Morris & E. R. Co., 73 N. J. Eq. 177, 67 Atl. 1028, 1030.

It seems to follow that this provision of the statute, if constitutional in this respect, forbids a reversal of the case unless this court, after an examination of the "entire record," including the state and weight of the evidence for each and both of the parties, which is conflicting, upon the pivotal point in the case, it appears that the error in question has probably resulted in a miscarriage of justice.

As to whether this court can, under our Constitution, weigh and consider conflicting evidence in a law case, as this is, for the purpose of determining whether such an error has probably resulted in a miscarriage of justice, appears never to have been directly decided; and this inquiry requires a consideration of section 19, art 2 (Williams' art. 27), of the Constitution, which reads as follows:

"The right of trial by jury shall be and remain inviolate, and a jury for the trial of civil and criminal cases in courts of record, other than county courts, shall consist of twelve men; but, in county courts and courts not of record, a jury shall consist of six men. This section shall not be so construed as to prevent limitations being fixed by law upon the right of appeal from judgments of courts not of record in civil cases concerning causes of action involving less than twenty dollars. In civil cases, and in criminal cases less than felonies, three-fourths of the whole number

of jurors must concur to render a verdict. In case a verdict is rendered by less than the whole number of jurors, the verdict shall be in writing, and signed by each juror concurring therein."

Also section 2, art. 7 (Williams' sec. 187), of the same, which reads as follows:

"The appellate jurisdiction of the Supreme Court shall be co-extensive with the state, and shall extend to all civil cases at law and in equity, and to all criminal cases until a Criminal Court of Appeals with exclusive appellate jurisdiction in criminal cases shall be established by law. The original jurisdiction of the Supreme Court shall extend to a general superintending control over all inferior courts and all commissions and boards created by law. The Supreme Court shall have power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, prohibition. and such other remedial writs as may be provided by law, and to hear and determine the same; and the Supreme Court may exercise such other and further jurisdiction as may be conferred upon it by law. Each of the justices shall have power to issue writs of habeas corpus to any part of the state upon petition by or on behalf of any person held in actual custody, and make such writs returnable before himself, or before the Supreme Court, or before any district court, or judge thereof, in the state."

In 11 Modern American Law, pp. 257, 258, it is said:

"The provision in the federal Constitution that 'no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law,' is not in effect different in result from the usual constitutional guaranty of jury trial without such specific provision."

But the unquestionable legislative power, when it exists, as it does in some jurisdictions where the common law prevails, to deny the right of appeal would necessarily include the lesser power to deny the right to reversal of a case for an error which, in the opinion of the reviewing court after weighing the evidence, including the conflicting evidence, in an examination of the entire record, has not probably resulted in a miscarriage of justice; and, since the right of trial by jury has not been thought affected by the existence or exercise of such greater power. I think it clear that the question here does not involve or touch the question of the right of trial by jury, and must be referred to the right of review.

Further, it must be obvious that our constitutional right of trial by jury (section 19, art. 2, Williams' sec. 27) is not abridged or impaired by this court's assumption of the pow-

er and exercise of the duty to weigh conflicting evidence for the sole purpose of ascertaining whether an erroneous instruction to the jury has probably resulted in a miscarriage of justice, unless, as cannot be maintained, that right includes the right of review, as the exercise of this power and the performance of this duty can ever cause a reversal or disturbance of a verdict, although it may cause the affirmance of one which would otherwise be reversed.

And in the absence of a constitutional guaranty of the right of review in an appellate court, it is too well settled that it is within the legislative power to deny this right (4 Corpus Juris, Appeal and Error, sec. 2567, p. 672; R. C. L. 28, 29; 10 Modern American Law, 198; 2 Cyc. 507) to doubt that, in the absence of inviolable constitutional right and limitation of review to the rules of the common law, the Legislature has the power to deny in all cases the right of reversal, unless the error in the instruction complained of has probably resulted in a miscarriage of justice in view of the "entire record," including the state and weight of conflicting evidence upon pivotal points, as the statute under consideration purports to do.

It is a question here if section 2, art 7 (Williams' sec. 187), of our Constitution does not guarantee, as against legislative or judicial change, a right of review on appeal according to the rules of the common law, and if this provision does not forbid this court, in a law case, to weigh conflicting evidence. that is sufficient to sustain a verdict for any purpose whatever, although I have reached the conclusion that this guaranty of the right of review does not extend quite so far, even if it be conceded that this is not in accord with the common law, which may be doubted. In both State v. District Court, 24 Mont. 539, 63 Pac. 395, and Finlen v. Heinze, 27 Mont. 107, 69 Pac. 829, 70 Pac. 517, a constitutional provision very much like our own was held to guarantee the right of appeal, and thus take away the legislative power to deny it.

But it does not necessarily follow that a losing party with a right of appeal has an absolute right under the common law to have the errors of which he complains reviewed without regard to the weight of conflicting evidence that is otherwise sufficient upon the pivotal points in the case, nor that the right of review is not subject to legislative change in this respect or to judicial modification to permit progress in the science of the law towards the ends of justice; but, to the contrary, it appears that courts of review in general have deemed themselves possessed of the power to weigh such evidence and have abstained from doing so for other reasons than for lack of power. This will appear from many of the following authorities, in which the italicization is my own; and if the power to weigh conflicting evidence that is otherwise sufficient exists, for the purpose of ascertaining whether a reversal should not be adjudged thereon, determining the question of reversal, it seems the power of doing so for the purpose of ascertaining the probable effect of an error of law occurring in the trial of the case must certainly exist.

In 11 Modern American Law, 258, it is said:

"On an appeal to a higher court for the review of a judgment rendered in a court of general jurisdiction, the question to be determined is whether any material error of law was committed in the procedings resulting in such judgment; and it is not the function of the appellate court to review the decision of the lower court so far as it relates only to questions of fact as distinct from questions of law. The appellate court does not have the witnesses before it and it interferes with the verdict of the jury as to questions of fact only when it appears that owing to errors in the proceedings committed by the trial judge, the case, so far as it involves questions of fact, has not been fairly submitted to the jury in accordance with the rules of law applicable, and has not been determined by the jury in accordance with such principles of law in the exercise of a fair and unbiased judgment."

In 2 R. C. L. 193-197, it is said:

"In some jurisdictions appellate courts are prohibited from reviewing questions of fact. * * * In other jurisdictions the duty is expressly imposed by statute on the appellate court to review the evidence and exercise its judgment as to the weight thereof * * * The verdict of a jury on questions of fact will not, as a general rule, be disturbed by the reviewing court either in civil or criminal cases, and though the evilence on which a conviction was based is such that another jury might properly reach a different conclusion, yet if it is not so weak that the cause ought not to have been submitted to the jury, their conviction will be sustained on appeal. Where the evidence is conflicting, the reviewing court will only examine it to see if there was any credible evidence to support the verdict, and having ascertained that fact it will not as a general rule, disturb it. This general rule is one which no one would, of course, venture to deny. One ground on which it might be rested is that the jury has had the advantage, which is denied to the appellate court, of seeing the witnesses and observing the manner in which the testimony was given, therefore they may be deemed more competent to say what weight should be accorded to it. It might also be rested on the ground that an appellate court should

not assume the power of dictating to juries that they must believe evidence against their own convictions as to the truth. * * * *It may be said, then, that the verdict should not be disturbed unless the reviewing court, after allowing all reasonable presumptions as to the correctness of the judgment denying the motion for a new trial, is clearly of the opinion that the preponderance of the evidence against the verdict is so decided as to convince it that the verdict is wrong and unjust,* though really the question is no longer one as to the preponderance of the evidence, but only as to whether or not the evidence was legally sufficient to support the verdict. Moreover, it must be remembered that the fact that the reviewing court would have reached a different conclusion does not of itself require a reversal. The credibility of witnesses, although they are wicked and depraved, is for the jury, and if the jury believe them, the appellate court will not declare the unworthy of credit or belief But while a reviewing court hesitates to set aside a verdict on the ground of insufficiency of the evidence, especially when the trial judge has refused to do so, still if it is flagrantly contrary to the evidence and the court is convinced that an injustice has been done it will and should set it aside, not only in criminal, but also in civil, cases." Chicago, R. I. & P. R. Co. v. Newburn, 39 Okla. 704, 136 Pac. 174; Peters v. Holder, 40 Okla. 93, 136 Pac. 400; Tulsa St. R. Co. v. Jacobson, 40 Okla. 118, 136 Pac. 410.

As repeatedly held by this court (Clawson v. Cottingham et ux., 34 Okla. 493, 125 Pac. 1114; Wichita Falls & N. W. R. Co. v. Stacey, 46 Okla. 8, 147 Pac. 1194, and many others) it is said in 4 Corpus Juris, Appeal and Error, sec. 2836, p. 857:

"Where the evidence is conflicting, the appellate court, in determining whether the evidence is sufficient to support a verdict. must assume that the evidence in favor of the successful party is true, leave out of consideration entirely evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it."

But in each statement of the rule against weighing conflicting evidence that was otherwise sufficient in courts of review, it will be observed that the question was whether the cause should be reversed upon the ground of the insufficiency of such evidence to support the verdict; and even that rule is not absolutely uniform, as will be seen from some of the italicized portions of the foregoing quotations and the following excerpt from 4 Corpus Juris, Appeal and Error, sec. 2837. p. 861 as well as from the cases cited in the notes to the same:

"Notwithstanding the general rule that a verdict on conflicting evidence will not be disturbed, it has been held that the reviewing court will nevertheless reverse where the evidence overwhelmingly preponderates against the verdict, where the evidence in support of the verdict is in itself incredible, or where the verdict is unexplained on any possible hypothesis."

In 4 Corpus Juris, Appeal and Error. sec. 2838, pp. 861-863, it is said:

"The verdict will not be set aside because against the weight of the evidence where there is some competent evidence to support it, or unless the verdict is clearly and palpably against the great weight of the evidence, unless there is something to indicate that some mistake was made in the application of the law, or unless the weight of the evidence is such as to indicate prejudice, passion, corruption, or other improper motive. On the other hand, it is well settled that the verdict will be set aside when it is clearly and palpably against the great weight of the evidence, or where the manifest injustice thereof shows mistake, prejudice, sympathy, corruption or other improper motive on the part of the jury."

In 2 R. C. L. sec. 195, p. 232, it is said:

"While formerly the tendency may be said to have been to consider slight error as prejudicial, the courts in more recent times have taken a somewhat more sensible and practicable view, and the tendency now is, to a great extent, to pass over errors as to incidental matters, whenever it is possible to do so, and look to the substantial merits of the case."

In Id. sec. 195, p. 233, it is said:

"In several jurisdictions statutes are now in force which forbid the reversal of a judgment for any error which does not affect the substantial rights of the parties. * * *"

And in Id. sec. 195, p. 234, citing Broadway Mfg. Co. v. Leavenworth Terminal R. & Bridge Co., 81 Kan. 616, 106 Pac. 1034, 28 L. R. A. (N. S.) 156, it is said:

"Error cannot be regarded as harmful, so as to require a reversal, unless, within reasonable probabilities, had the error not occurred the result might have been more favorable to the one complaining of it."

In the instant case the question is not as to whether the evidence in respect to weight in the light of conflicting evidence is sufficient to support the verdict, that is, as to whether the cause should be reversed because of its insufficiency in this respect; but the question here is as to whether an error in the instructions requires a reversal and as to whether the court can and must weigh such evidence for the purpose of ascertaining the probable effect of such an error and refuse to reverse in the absence of a probable injury and miscarriage of justice in the light of what ap-

pears to be the state and weight of the evidence. To do so appears to be in accordance with the intent of the statute under consideration.

In my opinion, a constitutional guaranty of the right of appeal does not include a right to review with eyes closed as to the state and weight of conflicting evidence; but the evidence upon which the verdict is based may be weighed in the light of the weight of conflicting evidence and the entire record considered for the purpose of ascertaining whether an error in the instructions "has probably resulted in a miscarriage of justice."

In my opinion section 6005, Rev. Laws 1910, is constitutional in this respect, and therefore requires us to weigh the conflicting evidence in the instant case for the purpose of ascertaining whether the error under consideration has "probably resulted in a miscarriage of justice" and requires a reversal on this ground.

As I have already stated in another form, in reversing causes for errors of law made by the trial judge in instructing the jury or in admitting or rejecting evidence, reviewing courts frequently refer to the state and apparent weight of conflicting evidence upon the pivotal question in the case as a consideration favoring the reversal; and no good reason appears why the same may not be done as a consideration favoring affirmance. My opinion as to the law of this case may be recapitulated as follows:

First. Neither section 19, art. 2 (Williams' sec. 27), nor section 2, art. 7 (Williams' sec. 187), of the Constitution of Oklahoma has the effect of inhibiting this court from weighing or the Legislature from requiring it to weigh and consider, as a part of the record in this court, conflicting evidence upon the pivotal points in a case in ascertaining whether an error in an instruction to the jury has probably resulted in a miscarriage of justice under section 6005, Rev. Laws 1910, making such probable result the pivotal question in determining whether a judgment should be set aside or a new trial shall be directed by this court on account of such error when the same does not violate any constitutional or statutory right.

Second. Where the evidence upon the pivotal points in a case is conflicting, section 6005, Rev. Laws 1910, in effect, makes it the duty of this court to weigh and consider the weight of such evidence in its examination of the entire record, in order to determine from such record whether an error in an instruction that does not violate a statutory or constitutional right has probably resulted in a miscarriage of justice as the sole predicate upon which a judgment may be set aside or

a new trial granted by this court for such an error.

Third. Where a verdict does not appear to be even probably unjust, as contrary to the truth or in some other respect, when the evidence is weighed and the entire record is considered the same should not be disturbed because of an error in any instruction that does not violate a statutory or constitutional right, although the cause would be reversed because of such error if such evidence apparently preponderated against such verdict or the latter in any manner appeared to be probably untrue or otherwise unjust.

Fourth. Although an instruction to a jury that in determining the weight they will give the testimony of each witness they may, in addition to other things specified, consider "all other facts and circumstances in evidence or coming to their observation during the trial is too broad, and, thus, erroneous in the part I have here italicized, and although an extraneous matter relating to this question may have been wrongfully considered by some, if not all of the jurors, in arriving at their verdict, it is the duty of this court, under section 6005, Rev. Laws 1910, to refuse to set the judgment aside or grant a new trial because of such error. if, after an examination of the entire record, including the apparent weight of the conflicting evidence upon the pivotal point in the case, it does not appear that such error has probably resulted in a miscarriage of justice Especially is this duty clear where such extraneous matter would have been admissible as evidence.

I have examined the evidence and, with due allowance for the fact that I have not seen nor heard the witnesses testify, have weighed it as best I can; and it does not appear to me, in the light of "the entire record," including this evidence, that the error in question has probably resulted in a miscarriage of justice, although the possibility that it may have done so is obvious.

Especially does this conclusion seem correct in view of the fact that the extraneous matter mentioned, as having been considered by some, if not all, of the jurors, would have been admissible in evidence, and in view of the further fact that the defendant is responsible for the opportunity the jury had to observe it.

To sum up what has been especially considered in reaching this conclusion, we have considered in favor of the probability of a miscarriage of justice in this case the scope and possible effect of the error in the instructions and the consideration by some, if not all, of the jurors in accord therewith of the specified extraneous matter observed by them,

which appears to have influenced the action of one or two jurors, while we have considered and weighed against the probability of a miscarriage of justice resulting therefrom the fact that such extraneous matter was admissible in evidence, that nine of the jurors who are not shown to have been affected by such extraneous matter could have rendered a verdict, and especially the further fact that the evidence seems to preponderate in favor of the verdict, and thus to negative the probability of a different verdict even if the instruction had been different and absolutely correct. In the light of the "entire record" and particularly these specific matters, it does not appear probable that there has been a miscarriage of justice resulting from the error in question.

In my opinion, the original opinion by Commissioner Bleakmore should be adhered to, except in so far as it is not in accord with the view herein expressed; and the petition for rehearing should be denied.

I concur in the conclusion reached in this case.